## WALES-RIGGS PLANTATIONS *v.* BANKS.

### Opinion delivered January 1, 1912.

1. REFORMATION OF INSTRUMENT—MISTAKE—SUFFICIENCY OF PROOF.— To justify or authorize the reformation of a written instrument on the ground of alleged mistake, the proof of such mistake must be established, not merely by a preponderance of the evidence, but by proof that is clear, unequivocal and decisive. (Page 466.)

2. FORFEITURE—WHEN WAIVED.—Where there has been a breach of a contract of lease sufficient to cause a forfeiture, and the party entitled thereto, either expressly or by his conduct, waives it, equity will relieve the defaulting party from a forfeiture unless the violation of the contract was the result of gross negligence, or was wilful and persistent. (Page 466.)

3. TRIAL—DUTY TO MAKE DEFENSES—TRANSFER OF CAUSE.—A defendant, when sued at law, must make all the defenses he has, both legal and equitable; and if any of them are exclusively cognizable in equity, he is entitled to a transfer to equity. (Page 469.)

4. SAME—TRANSFER—WAIVER OF OBJECTION.—The error of transferring an action at law to the chancery court is waived where no objection was made thereto. (Page 469.)

Appeal from Cross Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*Chas. E. Robinson,* for appellant.

1. The court erred in entering a decree reforming the contract.

Mere preponderance of evidence is not sufficient for the reformation of a written contract, but the mistake must appear

beyond reasonable controversy.   94 Ark. 206;   71 Ark. 617; 85 Ark. 62.

Reformation will be denied where the evidence for and against it is evenly balanced.   75 Ark. 72;   79 Ark. 262.

Where a party has had opportunity to examine a contract submitted for his signature, he can not afterwards escape its obligations on the ground that he failed to do so.   84 Ark. 349.

Before reformation will be awarded, it must be shown that the mistake was mutual, and that the contract as executed does not express the understanding of either party   89 Ark. 309.

The acts and statements of an agent, to be binding upon the principal, must be shown to have been within the apparent scope of his authority.   48 Ark. 138; 41 Mo. 503;   Clark on Contract, 734.   The fact that Donohue was plaintiff's agent to rent out the land does not imply authority in him to modify the lease contract.   61 N. W. 857;   23 Am. & Eng. Enc. of L. 901;   104 Am. St. Rep. 980.

A party dealing with the agent of a corporation must at his peril ascertain what authority the agent possesses, and is not at liberty to charge the corporation by relying upon the agent's assumption of authority.   52 Mich. 87.

2.   The state of facts shown by the testimony raises no estoppel against, and constitutes no waiver of any right of, plaintiff to declare a forfeiture of the lease and eject the tenant, for either the failure to build and maintain the fence or to occupy and improve the premises as his home.   Kirby's Digest, § 6108;   62 Ark. 37, 42;   27 Conn. 538;   40 How. Prac. 349; Clark on Corp. 481;   62 Ark. 37;   2 Enc. of Ev. 793;   72 Ark. 579;   68 Ark. 288;   6 Pet. 51, 8 L. Ed. 316;   146 U. S. 689, 36 L. Ed. 1135, 1141;   Mechem on Agency, § § 100, 282;   1 Greenleaf, Ev. § 22;   30 So. 528;   85 Ark. 187;   3 Cook on Corp. 2224, 2234;   *Id.* 2230;   *Id.* 2311;   *Id.* 2316;   67 Ark. 550;   79 Ark. 45, 52;   69 Ark. 140;   124 Mass. 197;   128 Ala. 99;   109 S. W. 1057;   140 Cal 249;   109 Pa. St. 534;   31 Ind. App. 511; 1 Waterman on Corp. 448;   22 Wis. 199.

No presumption will be indulged in the absence of proof that the president and general manager of the corporation had authority to materially vary the terms of a deed of lease made by the company.   22 Wis. 194;   109 Pa. St. 534;   109 S. W.

(Mo.) 1057; 140 Cal. 249.   But, if he had such authority, the parol contract varying same as testified to by Banks and Bailes is without consideration and void.   Clark on Cont. 608 and cases cited; 4 So. (Ala.) 635, 639; 22 Am. St. Rep. 565; 94 Am. St. Rep. 811; 9 Enc. of Ev. 358; 1 Greenleaf on Ev. (14 ed.), § 303; 140 Cal. 249.   The covenants to erect and maintain lawful fences and to reside upon the premises and continue to fit it up for a home are "continuing" covenants. 18 Am. & Eng. Enc. of L. 388; 54 Ind. 544; 36 Minn. 80; 1 Tiffany on Land & Tenancy 1399.   Mere periodical collection of rent in silence and forbearing to declare a lease forfeited will not waive such a covenant nor estop forfeiture because of its violation, it being "continuing" in its nature.   3 N. W. 187; 123 N. W. 443; 36 Am. St. Rep. 486.

Conditions in a lease of a continuing nature are waived by the acceptance of rent by the landlord· as to past breaches only.   He may declare forfeiture for continuation of breach in that kind of covenant, though he has waived the right to forfeit for past breaches.   47 Am. St. Rep. 199, note; 59 Ark. 405, 410-12; 30 N. W. 446; 3 N. W. 187; Taylor, Landlord & Ten. (7 ed.), § 500; 54 Ind. 544; 63 Mo. 446; 6 Q. B. 953; 9 Barn. & C. 376; 18 Am. & Eng. Enc. of L. 384.   In the absence of waiver, forfeitures of the class in question here will be enforced.   Pomeroy, Eq. Jur. (3 ed.) § 454.   And, even where there has been a waiver such as to entitle the tenant to relief from the forfeiture, yet the relief will be denied where the breach was the result of gross, wilful or persistent negligence.   59 Ark. 410; Pomeroy, Eq. Jur. § 452; 86 Am. St. Rep. 45; 1 Vern. 449; 6 Duer 273.

3.   The only way in which chancery acquired jurisdiction was upon the statement of facts in the answer calling for a reformation of the contract.   If no ground for reformation was shown, the cause should be remanded with directions to transfer to the circuit court.   65 Ark. 503, 507; 56 Ark. 399; 3 Chand. 253.

*Harry M. Woods*, for appellee.

1.   The court properly held that the clause, "Houses— How and When Built," in copy of the contract held by appellant should be treated as eliminated and stricken therefrom.   The contract on its face shows that it was the intention of both

parties to treat this section as eliminated, and it was left meaningless by appellant for that purpose. The evidence of the contract is in duplicate, and the copy held by appellant is equally as good evidence of the agreement as that held by appellee, and *from the copy produced by appellant Riggs* the court was warranted in finding that the clause was intended to be stricken out.

"Courts are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they view them." 90 Ark. 272.

2. Appellant waives its right to declare a forfeiture, both as to the fence and residence clauses, by its acquiescence in the course of appellee for eight years, and expressly by the acts and request of its authorized officer, Riggs. 91 Ark. 133-137; 59 Ark. 405-40; 1 Pomeroy, Eq. Jur. 452; 75 Ark. 410; 83 Ark. 524.

While the relation of the principal and the agent can not be proved by the declaration of the agent, it may be established by the *testimony* of the agent." 90 Ark. 104; 80 Ark. 288. See also 93 Ark. 521; 11 Ark. 189; *Id*. 378; 55 Ark. 112; 54 Ark. 216; 49 Ark. 320.

3. The answer having set up defenses cognizable only in equity, the case was properly transferred. Moreover, no objection was raised to its being transferred. 59 Ark. 405.

HART, J. On the 11th day of March, 1910, the Wales-Riggs Plantations, a corporation, brought this suit in the circuit court against W. L. Banks and John Horton to recover possession of a forty-acre tract of land, belonging to the plaintiff, and leased to the defendant W. L. Banks for the term beginning July 2, 1902, and ending November 1, 1911.

The complaint alleges that the lease contained certain covenants whereby the defendant Banks bound himself to reside on said land, and not to sublet it, and whereby he agreed to erect and maintain a lawful fence around the place; that said defendant has failed to keep or perform these covenants; and that the lease contains a clause providing for a forfeiture for a nonperformance of any of the covenants of the lease. The prayer is for a judgment forfeiting the lease, and for the possession of the demised premises.

The defendants filed an answer in which they denied a

breach of any of the covenants of the lease. They set up matters which they allege constitute a waiver by the plaintiff of the forfeiture of the covenants of the lease, and by way of cross complaint ask a reformation of the lease in respect to the building of houses on the land. They also asked that the cause be transferred to the chancery court, and that the complaint be dismissed for want of equity.

The circuit court made an order transferring the cause to the chancery court, and the cause proceeded in the chancery court without any objection on the part of the plaintiff. The chancellor found for the defendants on all the issues, and a decree was entered reforming the lease in the manner asked by the defendant Banks, and dismissing the complaint for want of equity.

At the time the contract between the plaintiff and the defendant Banks was executed one A. Carr was holding the land under a lease similar to the one in question. All the land had been cleared, and was in cultivation; and two houses had already been erected on the land. Banks sold to Carr a tract of land, and as a part of the consideration it was agreed that Banks should succeed to the rights of Carr under his lease from the plaintiff. Carr's lease from the plaintiff was cancelled, and the lease now under consideration was executed in lieu of it. The plaintiff was a foreign corporation, and C. W. Riggs was its president and general manager, and he alone had power to make contracts for the corporation. The plaintiff had printed forms for its leases, and Riggs used one of these printed forms in preparing the lease in question. The lease was executed in duplicate, one being held by the plaintiff and the other being given to the defendant Banks. The original lease held by the plaintiff contains the following clause:

"Houses—How and When Built. To build a good log house or a board house, whichever said tenant prefers, the same to be not less than sixteen by eighteen (16x18) feet inside measurement, and the walls to be not less than nine (9) feet, with good floor and dry roof, also with good fire-place and brick or stick and dirt chimney. But said tenant may use a stove in place of chimney if preferred, in which case proper flues shall be put in by said tenant. Said house to be built on said leased premises when building site may be located by the

landlord, provided he directs the place, otherwise the tenant may select site. Said house to be completed within ⸺⸺⸺⸺ from the date of this instrument, one house as above described and agreed upon shall be built for each twenty acres herein leased, and when more than one house is to be built the time for completing same is as follows:   The first within ⸺⸺⸺⸺." This paragraph, including the dotted lines, is in print. The straight lines between the words "within" and "from" and after the word "within" at the end of the paragraph are in red ink, and it is conceded that they were placed there by C. W. Riggs when he prepared the contract. The original lease given to Banks is precisely similar to this, with the addition that the whole paragraph is crossed out by lines in black ink.

Banks testified that the lease was submitted to him for his signature by Donohoe, who was the agent of the plaintiff, and that he noticed that the paragraph above copied, and the clause against subletting were in the lease. That he called Donohoe's attention to the fact that it had been agreed that they should be left out, and Donohoe agreed to it. That the lease was returned to Donohoe for the purpose of having the clauses stricken out, and that when the lease was returned to him, the paragraph, beginning: "Houses—How and When Built" was marked out as shown in the lease, which he introduced in evidence, and that he did not notice that the clause against subletting had not been marked out. That he then signed the lease.

C. W. Riggs testified that the lines in black ink, which show that the paragraph beginning, "Houses—How and When Built," was stricken out of the lease, was not placed there by him, and that no other agent of the company had authority to make any such alteration. Testimony was also introduced by the plaintiff tending to show that these black lines were drawn with a different pen point and with different ink from the pen point and ink used in writing the written portion of the lease.

"To justify or authorize the reformation of a written instrument on the ground of alleged mistake, the proof of such mistake must be established, not merely by the preponderance of the evidence, but by proof that is clear, unequivocal and decisive." *Turner* v. *Todd*, 85 Ark. 62; *Wilson-Ward*

*Co.* v. *Farmers' Union Gin Co.*, 94 Ark. 206; *McGuigan* v. *Gaines*, 71 Ark. 617.

Bearing this rule in mind, we think that the finding of chancellor on this issue was correct.   The plaintiff had a printed form of lease.   A lease similar in form had been executed by plaintiff to one Carr.   It was agreed between Carr and Banks that the latter should succeed to the rights of the former under his lease.   Carr surrendered his lease to the plaintiff, and the present lease was prepared in order to substitute Banks for Carr.   Pursuant to his contract Carr had cleared and put in cultivation all the land on the forty acres in question.   He had also built two houses in compliance with his contract. These facts are testified to by Banks, and are not contradicted by the evidence for the plaintiff.   From the printed form of lease prepared and used by the plaintiff, it seems to have adopted the policy of requiring its tenants to clear the land, put it in cultivation and to build one house for each 20 acres of land leased, as above stated.   This had already been done before the lease to Banks was executed.   Riggs admits that he drew the red lines in the blank spaces in the paragraph under consideration.   This would seem to indicate that it was intended thereby to strike out that paragraph because it was not needed, having been already complied with by Carr before the present lease was executed.   Moreover, Riggs testified that he spent the winter of 1906 and 1907 in the locality in which the land was situated, and for a greater part of the time since 1902, when the lease was executed, had had a local agent whose duty it was to see that its tenants complied with the terms of its leases.   The lease contained a clause of forfeiture if any of the covenants of the leases were not complied with, and Riggs testified that he and his agents repeatedly tried to get Banks to comply with the covenant in regard to building the fence, yet not one word was ever said about building a house.

The complaint assigned various breaches of covenants as grounds of forfeiture, but the paragraph now under consideration was not mentioned as one of them.   Banks held the land under the lease for a period of eight years, and during this time, the other provisions of the lease were discussed, but no reference was ever made to the one under consideration.

The conditions above stated, which existed at the time the

lease was executed; the fact that the blank spaces in the provision in question was marked with a red line through them, and the further fact that the blank spaces in all the other numerous provisions were filled out to the utmost detail, point strongly to the fact that the parties intended to eliminate the provision in question from the lease. This view is strengthened by the subsequent acts and conduct of the parties. During the whole eight years that Banks held the land, according to the undisputed evidence, it was never referred to. The plaintiff never considered it when this suit was brought. Riggs says that he and his agents made repeated attempts to get Banks to comply with the other provisions of the lease during the eight years he held the land before the suit was brought. Hence it appears, from the interpretations put on the terms of the lease by the parties themselves, that the provision in question was not considered as a part of the contract. In addition to this, Banks testifies positively that it was their intention to eliminate the provision in question because its terms had already been complied with by Carr. After a careful consideration of all the evidence relating to this issue, we are convinced beyond question that the finding of the chancellor was correct.

In the matter of the alleged failure of the defendant Banks to provide fences, and to reside on the land, we also think the finding of the chancellor was correct. Banks owned land adjoining the leased land, and conducted a mercantile business. He had a permanent residence when he executed the lease, and this fact was known to the plaintiff. Banks held the land for eight years without any objection being made to the fact that he did not reside on the land. The land was cultivated by his co-defendant, Horton, under his personal supervision. As above stated, these facts were known to the plaintiff, and by its conduct it has waived any forfeiture on that account.

In regard to the fence, Banks testifies that he has at all times had a sufficient fence around the place to protect the crops, and has at all times paid the rent. That in the winter of 1906 and 1907 it was agreed between him and Riggs that he might wait until near the time of the expiration of his lease, and then erect a woven wire fence with two strands of barbed wire on top That he had such a fence in process of construction when the notice of forfeiture was served upon him. That

he has since constructed the fence around the whole forty-acre tract in accordance with this agreement with Riggs. It is true Riggs denies this; but the testimony of Banks on this point was corroborated by C. E. Bailes, who was present and heard the agreement made.

In the case of *Little Rock Granite Co.* v. *Shall*, 59 Ark. 405, the court held (quoting from syllabus): "Where there has been a breach of a contract of lease sufficient to cause a forfeiture, and the party entitled thereto, either expressly or by his conduct, waives it, equity will relieve the defaulting party from a forfeiture unless the violation of the contract was the result of gross negligence, or was wilful and persistent." To the same effect, see *Friar* v. *Baldridge*, 91 Ark. 133.

The answer of the defendant contained matters of equitable defense, in that it stated reasons for not complying with the covenants of the lease, which if true constituted a waiver of the forfeiture and also asked for a reformation of the lease. Therefore, the court did not err in transferring the cause to equity. *Little Rock Granite Co.* v. *Shall, supra.*

"A defendant, when sued at law, must make all the defense he has, both legal and equitable; and if any of them are exclusively cognizable in equity, he is entitled to a transfer to equity." *Daniel* v. *Garner*, 71 Ark. 484.

Assuming that the order transferring the cause to the chancery court was erroneous, no objection was made thereto, and, according to the settled rule of the court, the error was waived. *Blake* v. *Scott*, 92 Ark. 46; *Collins* v. *Paepcke-Leicht Lumber Co.*, 74 Ark. 81.

The decree will be affirmed.