## SALLEY *v*. MICHAEL.

### Opinion delivered December 19, 1921.

LANDLORD AND TENANT—FORFEITURE OF LEASE—WAIVER.—Although there was testimony to sustain a finding that there was such a change in the use of leased premises which was contemplated by the parties and evidenced by the lease as to amount to an abandonment of the lease, the right to a forfeiture for such abandonment is waived by the landlord where, with knowledge of a right to such forfeiture, he subsequently accepts rent from the tenant.

Appeal from Union Chancery Court; *J. Y. Stevens,* Chancellor; reversed and affirmed.

*Powell & Smead,* for appellants.

There is no provision in the lease for forfeiture, and the lessor is remitted to a suit for damages to the property. Should there be an implied covenant for rescission, still the landlord's remedy would be a suit for damages, and not an action for rescission of the contract. 86 Nev. 382; 62 Nev. 143; 24 Cyc. 1348 (d); 41 Ark. 532; 71 Ark. 494.

A tenancy cannot be terminated for a breach of covenant by the lessee where there is no provision in the lease for a forfeiture or right of re-entry on the occurrence of the breach. 24 Cyc. 1349 (b).

Michael waived the forfeiture, if there was any, by accepting rents after he knew of the conditions complained of.   90 N. Y. 594; 56 N. Y. 157; 33 N. W. 76; 62 N. W. 139; 60 N. W. 597.

Appellee cannot complain that his insurance was canceled by reason of the acts of appellants, as the evidence shows that the insurance companies placed the whole of the district in which his property is located in a restricted district and canceled all insurance on all the property located in the district.

*J. B. Moore* and *J. W. Warren,* for appellee.

Appellants have violated their implied obligation to use the property in a tenant-like manner.   118 Ark. 239; 24 Cyc. 1061; 50 Kan. 478.  They violated their obligation to refrain from exposing it to ruin or waste, and their obligation not to put the property to a use materially different from that in which it had been usually employed. 162 Mass. 176; 4 Gray 222; 109 S. W. 1014; 131 S. W. 639; 26 La. Ann. 402.  Their present holding is not under the contract but by force.

Where, by the conduct of the lessee, he has rescinded and abandoned the contract, the lessor has three remedies; (1) suit in equity to cancel the contract and recover any incidental damages; (2) suit at law for breach of contract, (3) or treat the contract as rescinded and sue at law for *possession.  Millar* v. *Mauney,* 150 Ark. 161. See also 41 Ark. 532; 86 Ark. 489.

Appellee is not estopped by reason of receiving the February rent, for appellants' use of the property was a continuing breach of the covenants and obligations of the contract.   24 Cyc. 1362.  See also 41 Ark. 532.

Appellee is not restricted to a suit for damages, for he has the fundamental right to have his property preserved in its original condition.   Const. Bill of Rights, sec. 22.

SMITH, J.   This suit was brought by appellee Michael to cancel a lease of a certain lot in the city

of El Dorado executed by him to appellants, L. L. and C. T. Salley. The court granted the relief prayed, and this appeal is from that decree.

The lot leased is 75 by 75 feet, fronting on Washington Street, one of the principal streets of El Dorado. There was a 5-room brick building on the lot at the time the lease was made, 4 rooms of which were used as a residence and the 5th room was used as a store. The building is in the residential portion of the city, and is in the shape of an L. The lease was dated October 18, 1920, and ran until August 1, 1921, with the right of renewal for a period not exceeding one year. The rent was $115 per month, payable in advance. The lease provided that the lessees should "use said premises so as not to damage or permanently injure the same, reasonable use, wear and tear and unavoidable accidents and casualties excepted." But there was no clause providing for a forfeiture for non-performance of the provisions of the lease.

On January 10, 1921, oil was discovered in El Dorado, and immediately a great boom commenced. Many buildings of a temporary character were erected, and tents were put up to accommodate the influx of people who rushed there.

Appellants cut down the shade trees and flowers on the lot in litigation, and proceeded to erect, on one side of the brick building standing thereon, a 2-story sheet-iron building, and, on another side of the building, a 2-story frame building. These buildings were of an inexpensive and temporary character, and Michael testified that, on account of these buildings, he had been notified that his insurance would be canceled, and that he would be unable to procure other insurance. Before the lease Michael had occupied a part of the brick building standing thereon as his residence, and one of the rooms as a store. After the erection of the additions by appellants, the property was used as a short-

order restaurant and a rooming house, and meals were served daily to a large number of transient people.

It was shown that, immediately after the discovery of oil, people rushed in from all directions, and hurried efforts were made by many property owners to accommodate these visitors and reap the harvest of profit afforded by their incoming. Buildings sprang up like mushrooms around Michael's property. For a few days after the oil well came in leases were in great demand, and Michael undertook to lease the vacant space on his property to another tenant. When the Salleys refused to consent to this, Michael sought to obtain the release of a portion of the yard. The Salleys refused to grant this request and proceeded with the erection of the buildings then under construction. The testimony shows that nearly all the houses that were constructed on the lot were placed there within seven or eight days after the well came in.

On January 17, 1921, Michael caused a written notice to be served on appellants, warning them not to place structures or buildings, of any kind or character, upon the lot in question, and advising that appellant's action in doing so was contrary to the intention of the parties at the time the lease was made. At the time this notice was served appellants were nearly through with the construction of the buildings except the building on the south side.

We think the testimony warrants the finding that these buildings destroyed the insurability of the brick building. It is insisted that other buildings of similar character adjacent to this lot would have accomplished this result, even though appellants had not built at all. This may be true, but, if so, it did not justify appellants in so using the property as to increase the fire hazard.

It is the insistence of appellee Michael that appellants have so far changed the character of the property and the uses for which it was let, as contemplated by the parties, as to amount to an abandonment of the

lease and to be tantamount to a possession not authorized by the lease. The court so found and canceled the lease as having been abandoned, and awarded damages in the sum of $700, which the court found would be the cost of restoring the property to its condition at the time the lease was made.

The lease contains no clause providing for a forfeiture for breach of any express or implied covenant of the lease; and appellants' first insistence is that appellee should be remitted to a suit for damages, as the right to declare a forfeiture was not reserved in the lease, and they are tendering, each month, the rent provided for by the contract.

Without further reciting the testimony, we have concluded that, although the testimony may support the court's finding that there was such a change in the use of the premises contemplated by the parties and evidenced by the lease as to amount to an abandonment thereof, the right to claim an abandonment has been waived.

Michael was fully advised of the conditions on January 17th, when he gave the notice set out above, yet, on the first of February thereafter, he collected the rent for that month. This rent was not actually paid to Michael, but was paid to his wife; but it was a custom of Michael to have these rents paid his wife. It was evidently the opinion of Michael that, having given the notice, he had the right to continue to collect rent, as is evidenced by the following question and answer: "Q. At the time this rent was paid, did you make any objection whatever to the way he was using the property, about these houses and things being on it? A. I had already sent him notice." Michael appears to have later been advised to refuse the rent, and has since declined all tenders thereof, which were made him regularly.

Appellee Michael insists that there was no waiver of the right to claim an abandonment, because of the

written notice which had been served, and because, in the language which he quotes from 24 Cyc., p. 1362, "The receipt of rent is not a waiver of a continuing breach of covenant, such as the breach of a covenant as to the use of the premises, a covenant to insure the premises, or a covenant to repair."

The defect in this answer to the assertion of the claim of waiver is that a mere breach of a covenant is not, in the absence of a stipulation in the lease to that effect, a ground of forfeiture. Parties may stipulate for forfeitures for non-performance of the provisions of a lease, and the courts give effect to and enforce these stipulations; but, in the absence of a forfeiture clause, the lessor is remitted to an action for damages for a mere breach of a covenant. *Buckner* v. *Warren*, 41 Ark. 532; *Williams* v. *Shaver*, 100 Ark. 565; *Sells* v. *Brewer*, 125 Ark. 108; 16 R. C. L., p. 1115, § 633 of the article on Landlord & Tenant, and cases cited in the note to that text.

But, as we have said, this action is not maintainable upon the theory that there has been a breach of some covenant but on the theory that there has been an abandonment of the lease. *Millar* v. *Mauney*, 150 Ark. 161. And we have concluded that, if there was an abandonment of the lease, there was also a waiver of that fact by the collection of the February rent. In 16 R. C. L. p. 1132, § 653, of the article on Landlord & Tenant, the law is stated as follows:

"The most familiar instance of the waiver of the forfeiture of a lease arises from the acceptance of rent by the landlord after condition broken, and it is a universal rule that if the landlord accepts rent from his tenant after full notice or knowledge of a breach of a covenant or condition in his lease for which a forfeiture might have been demanded, this constitutes a waiver of forfeiture which cannot afterward be asserted for that particular breach or any other breach which occurred prior to the acceptance of the rent."

Our cases are to the same effect. *L. R. Granite Co.* v. *Shall,* 59 Ark. 405; *Wales-Riggs Plantations* v. *Banks,* 101 Ark. 461.

The decree of the court below, canceling the lease, is therefore reversed; but the part thereof awarding damages for the restoration of the property to its original condition is affirmed.