HODGES *v.* HARRELL.

Opinion delivered March 7, 1927.

1. MINES AND MINERALS—WAIVER OF FORFEITURE OF LEASE.—A provision in an oil lease for forfeiture for failure of lessee or assignee to drill a well within 5 years was waived where the lessor allowed the assignee to enter upon the lease and begin drilling a lease after the five-year period without taking any steps to prevent drilling.

2. MINES AND MINERALS—WAIVER OF PROVISION IN LEASE.—A lessor can waive a provision in the lease for his benefit.

3. DISMISSAL AND NONSUIT—REFUSAL OF PLAINTIFF TO PROCEED.— Where a suit in equity, which involved merely a matter of damages, was properly transferred to the law court, and the plaintiff,

demanding a retransfer, refused to proceed further in the law court, the case was properly dismissed.

Appeal from Union Circuit Court, Second Division; W. A. *Speer,* Judge; affirmed.

### STATEMENT BY THE COURT.

On the 24th day of November, 1924, the appellant, J. L. Hodges, and his wife, Birdie Hodges, filed a suit in the Union Chancery Court against B. Harrell, Humble Oil & Refining Company, O. A. Gilliland and W. H. Gilliland, in which they charged, in substance, that they were the owners of three separate and segregated tracts of land in Union County, Arkansas, and described as follows: The northwest quarter of the southeast quarter of section 6, township 16 south, range 16 west; lots four (4) and five (5) in the northeast quarter of section 1 (being the south half of the northeast quarter of said section 1, 80 acres), and the south half of the northeast quarter of section 12, township 16 south, range 17 west, or a total of 200 acres altogether; that, on the first day of October, 1919, they executed and delivered to O. Alexander an oil and gas lease on said land, which said oil and gas lease reads as follows:

"This agreement, made and entered into on this the first day of October, 1919, by and between J. L. Hodges and Birdie Hodges, his wife, of........................., party of the first part, hereinafter called lessor (whether one or more), and O. Alexander, party of the second part, hereinafter called lessee, witnesseth:

"That said lessor, for and in consideration of twenty dollars ($20) cash in hand paid, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept and performed, have granted, conveyed, demised, leased and let, and by these presents do grant, convey, demise, lease and let unto said lessee, for the sole and only purpose of mining and operating for oil and gas, and laying of pipe lines, and of building tanks, towers, stations and structures thereon

to produce, save and take care of said products, and all that certain tract of land situated in the county of Union and State of Arkansas.

"Northwest quarter of the southeast quarter of section 6, township 16 south, range 16 west, and lot 5 in the northeast quarter of section 1, township 16 south, range 17 west, and lot 4 in the northeast of section 1, township 16 south, range 17 west, and containing 200 acres more or less.

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

"In consideration of the premises the said lessee covenants and agrees:

"1st.   To deliver to the credit of the lessor, free of cost, in tanks or pipe line to which it may connect its wells, the equal one-eighth part of all oil produced and saved from the leased premises.

"2nd.   To pay the lessor thirty dollars each year, in advance, for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling-houses on said land during the same time, by making his own connection with the well, at his own risk and expense.

"3rd.   To pay lessor for gas produced from any oil well used off the premises at the rate of................dollars per year for the time during which said gas shall be used, said payments to be made each three months in advance.

"If no well be commenced on said land on or before the................day of ...................., 19........, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender to the lessor, or to the lessor's credit in the Merchants' & Planters' Bank of Camden, Arkansas, or its successors, which shall con-

tinue as the depository, regardless of changes in the ownership of said land, the sum of...................dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for...................from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods in the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down-payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid and any and all other rights conferred.

"Should the first well drilled on the above described land be a dry hole, then, in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee, on or before the expiration of said twelve months, shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that, upon the resumption of the payment of rentals, as above provided, the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments.

"If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided shall be paid the lessor only in the proportion which ...................interest bears to the whole and undivided fee.

"Lessee shall have the right to use, free of cost, gas, oil and water produced on said land for its operation thereon, except water from wells of lessor.

"When requested by lessor, lessee shall bury its pipe line below plow depth.

"No well shall be drilled nearer than 200 feet to the house or barn now on said·premises, without the written consent of the owners.

"Lessee shall pay for damages caused by its operations to growing crops on said land.

"Lessee shall have the right, at any time, to remove all machinery and fixtures placed on said premises, including the right to draw and remove casings.

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof, and it is hereby agreed that, in the event this lease shall be assigned as to a part or as to parts of the above described lands, and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rentals.

"Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lessee shall have the right at any time to redeem for lessor, by payment, any mortgages, taxes or other liens on the above described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof.

"And I, Bertie Hodges, wife of the said J. L. Hodges, for and in consideration of the said sum of money and the covenants and agreements above mentioned, do hereby release and relinquish unto the said lessee all

my right of dower and homestead in and to the said lands for the purpose aforesaid.

"Witness our hands and seals on this 1st day of October, 1919.

"J. L. Hodges (Seal)
"Bertie Hodges (Seal)"

That on October 21, 1922, the lessee, O. Alexander, and his wife assigned the northwest quarter of the southeast quarter of 6-16-16 to B. Harrell for a consideration of $1, and $7,000 to be paid out of 7/16th of the first oil produced on said tract of land; that on the 18th day of September, 1923, the lessee, Alexander, conveyed by assignment to O. A. Gilliland, for a consideration of $1 and other good and valuable consideration, all the right, title and interest which he owned in said 40-acre tract; that on the 23rd of November, 1922, B. Harrell assigned to the Humble Oil & Refining Company, for a consideration of $1 and other good and valuable considerations, all his rights in and to the same 40-acre tract; that on the 24th day of October, 1924, the Humble Oil & Refining Company conveyed to W. H. Gilliland an oil and gas lease to the same 40-acre tract. They further alleged that, by the covenants, terms and conditions of said original lease to said Alexander, each and all of the appellees who purchased a part of the original lease became responsible to carry out the covenants and conditions of the original lease, "that is, to drill for oil on each individual parcel or tract of land which they had purchased, or to pay annual rentals thereon each year after the first year, in order to hold said lease in force and effect for the term of five years, which payments are here admitted having been made, which kept said lease in force for a period of five years." They further alleged that appellees had failed or refused to drill on said 40-acre tract within five years, as provided in said original lease, and that, said full five years having expired on the first day of October, 1924, without any producing oil or gas well or wells on said land, their right to do so had expired, and that appellants' title

was thereby clouded, to their damage in the sum of $24,000.

They further allege that, since the first day of October, 1924, they have notified the defendants of the expiration of their rights on said land, and demanded releases, which appellees refused to do, to their damage as aforesaid; that they have been deprived and hindered from leasing said land to other parties, who had offered to pay them $12,000 for same in oil, and to drill two wells on said land at once; that said land is proved oil land, and that, by reason of their failure to drill offset wells to producing wells near said land, they have been damaged in the further sum of $10,000. They ask for a cancellation of the lease and all assignments and for judgment of $22,000 damages.

On January 14, 1925, the court, upon petition of appellees, entered an order requiring appellants to make their complaint more definite and certain. On January 21, 1925, appellee, W. H. Gilliland, filed a petition for a receiver, alleging that, before the institution of the suit, he entered upon this 40-acre tract and began the drilling of a well in search of oil and gas; that, at the time the suit was filed, said well was practically completed, and that, since the institution of the suit, he had completed said well and that same was producing approximately 400 barrels of pipe-line oil per day, and that he had been notified by the pipe-line companies they would be unable to continue running the oil produced from said well, due to the uncertainty of title, and that he was unable to erect storage tanks to care for the oil, and that, unless a receiver was appointed with authority to operate the well and protect the property from drainage, both appellants and he would suffer great injury. On the 22d day of January the court entered an order appointing a receiver, who qualified and took charge of said well.

By agreement of counsel on oral argument in this court, the record was amended to include a pleading called "amendment to complaint in equity," which was filed on February 2, 1925, but not included in the tran-

script, and which, with slight exception, is a repetition of the original complaint. By it they allege that they had been damaged in the sum of $50,000 for failure to drill offset wells to protect said land, and $24,000 for failure to clear the records of said lease and assignments.

On February 3, 1925, in compliance with the order of court to make more definite and certain, appellants filed an amendment to their complaint, describing all the land covered in said original lease, and alleging that a well—known as Hodges No. 1, had been completed on the southwest ¼ southwest ¼ northeast ¼ section 1, 16, 17, on August 1, 1923, with an initial production of 300 barrels. This well was located upon the 80-acre tract covered by the original lease in section 1, 16, 17; that Steel Oil Company and Gilliland drilled Hodges No. 1 on the northeast quarter southeast quarter northeast quarter section 12, 16, 17, beginning on July 24, 1923, and completing same on December 30, 1923, with an initial production of 15 barrels, and that said well has been abandoned, and that other wells, describing them, had been drilled on other land covered by the lease; that W. H. Gilliland drilled Hodges No. 1 on the land in controversy, permit for same having been issued on November 15, 1924, and was drilled after the term of the lease had expired.

They further allege that two parties had offered them $12,000 to be paid in oil for the 40-acre lease in question, provided the title was cleared. They further allege that a number of wells had been drilled on land near by the land in controversy, which had been in operation and producing oil for from ten days to two years; that there were about ninety-five (95) producing wells within one mile from the 40 acres in controversy, which had been producing for more than a year, and that the plaintiffs had been damaged in the sum of $10,000 for the royalty which they should have received, and which they have been deprived of receiving by reason of the fact that the oil on his land has been drained to these various other wells.

Appellees, on February 5, filed an answer admitting the ownership of the land and the making of the leases and assignments as set out in the complaint, but deny that it became the duty of any of the appellees to drill for oil on each of the individual parcels of land described in the original lease, but state that, within said five (5) year period, seven wells were drilled for oil and gas on the premises described in the original lease, and that, at the expiration of the said five (5) year period, five wells were producing oil on said premises, as set out in the amendment to the complaint filed herein, and that, by reason thereof, said lease, by its terms, continued in full force and effect, and will so continue so long as oil and gas, or either, is produced from said premises, or any part thereof. They deny that, by reason of the failure to produce oil on the said 40 acres within the five (5) year period, said lease expired on the first of October, 1924, and deny that the lease and assignments are a cloud on appellant's title. They deny that appellants have, at any time, before the filing of the suit, notified them that said 40-acre lease had forfeited or expired by virtue of the five (5) year period; that they were notified to execute releases thereto, and deny that appellants requested them or any of them to release same on the margin of the records; that appellants suggested and encouraged them to purchase the 40-acre lease in question, and that they were present at all times when preparations were being made to drill said well, which was commenced about October 8, 1924; encouraged the drilling of same, and that he continued until said well had been almost completed, when he filed this suit, without notice to either of them of his intention to do so. They enter appropriate denials to all the material allegations set out in the original and amendments to the complaint.

The action was set for trial on the 11th day of February, 1925, and on that date appellees filed a motion to transfer this cause to the law docket, for the reasons as alleged, (1), that this court is without jurisdiction to

hear the only material issue raised by the pleading, which is the alleged damages to the 40-acre tract in controversy, on account of the alleged failure to drill offset wells; (2), that only a partial breach of the original contract from appellants to Alexander is alleged, and that this court is without jurisdiction to determine that issue; and, (3), that the appellant had a complete and adequate remedy at law.

On February 13, 1925, the court made an order directing the receiver to file an accounting within 30 days, and to transfer the case to the law docket as soon as the receiver had accounted for all his acts, and appellants excepted.

Thereafter, on the 9th day of March, 1925, the receiver filed his report, which, over the objection of the appellants, was approved, and the cause was transferred to the law docket.

On March 11, 1925, appellants filed in the circuit court a motion to retransfer this cause to the court of equity, which motion was, on May 13, overruled by the court, and on November 27, 1925, appellants renewed their motion in the law court to retransfer this cause to equity, which was overruled, and counsel for appellants announced in open court that they would stand upon their motion and refuse to proceed further with the case. Thereupon the court ordered plaintiffs' complaint dismissed. From which comes this appeal.

*Allyn Smith,* for appellant.

*Marsh, McKay & Marlin* and *Powell, Smead & Knox,* for appellee.

McHANEY, J., (after stating the facts). Counsel on both sides of this case, in their very able briefs, have presented for our consideration some very interesting questions. Appellants contend that, where a lease is executed to several tracts of land by the terms of which the lessee is required to drill a well on said lands within a certain specified time, and thereafter the lessee assigns one of said tracts to another person, the assignee or the original lessee is bound, either by the express

or implied covenants contained in the original lease, to drill a well on such tract within such time, regardless of the fact that the original lessee or his assignees has drilled one or more wells on the other portions of the land contained in the original lease.

Appellants further contend that, in such a case, they may maintain an action in a court of equity to cancel such portion of the lease and the rights of all assignees claiming thereunder after the expiration of the time limited in the lease contract for drilling a well, on the ground that such tract has been segregated from the original lease by assignment, and is in the same situation as if such tract had been covered by a separate lease agreement between the lessor and original lessee.

Counsel for appellees contend that this is not true; that the drilling of a well by the original lessee or any assignee on any part of the lands originally leased, within the time limited in the lease, protects the whole of the leased premises and every part thereof, from forfeiture and cancellation for failure to drill on any other part of the leased premises that may have been assigned by the original lessee, and that therefore a suit in equity to cancel the 40-acre lease in controversy here, same being one of the three tracts originally leased, containing 200 acres, cannot be maintained, as it is a suit to cancel a part of the lease, and that therefore appellants' suit states no cause of action cognizable in equity, and that whatever cause of action he had remaining would be one at law for damages.

But we find it unnecessary in this case to decide these interesting questions. In the plaintiff's amended complaint filed on February 3, 1925, in compliance with the order of the court requiring the complaint to be made more definite and certain, it is alleged "that W. H. Gilliland drilled Hodges No. 1 on the northwest quarter of the northeast quarter of the southeast quarter of section 6, township 16 south, range 16 west, permit having been issued on November 15, 1924, and same having

been drilled after the term of the lease had expired," which is on the land in controversy.

It will therefore be seen that the appellants themselves say, on the face of their complaint, that the appellee, W. H. Gilliland, had drilled a well on the 40-acre lease in question after it is claimed by the appellants that the lease had expired. Without deciding in this case whether, under the terms of the lease, the appellee, W. H. Gilliland, who claimed title thereto through mesne conveyances from the original lessee, O. Alexander, was required to drill a well on this particular 40 acres within the five-year period limited in the lease, we think it would be manifestly unjust and inequitable for appellants to stand by, after October 1, 1924, and permit appellee Gilliland to enter upon the land and drill a well under the belief that he had the right to do so. The original complaint in this case was filed on November 24, 1924, nine days after they say the permit for the drilling of said well was issued, and manifestly after the drilling of a well on said 40 acres had been begun by Gilliland.

The lease was dated October 1, 1919, and the five-year period for drilling a well, if he was required to drill one on this particular 40 acres within that period of time, expired October 1, 1924. This was a provision in the lease for the benefit of the lessor, and one which he could waive. By permitting appellee, Gilliland, to enter upon said lease and begin the drilling of a well without taking any steps to prevent him from doing so, we hold that appellants waived the right to insist upon a forfeiture and a cancellation of the lease as to this particular 40 acres.

In the case of *Friar* v. *Baldridge*, 91 Ark. 137, 120 S. W. 991, this court said: "The law will strictly enforce the agreement of the parties as they have made it; but, in order to find out the scope and true effect of such agreement, it will not only look into the written contract which is the evidence of their agreement, but it will look also into their acts and conduct in the carrying out of the

agreement, in order to fully determine their true intent. It is a well-settled principle that equity abhors a forfeiture, and that it will relieve against a forfeiture when the same has, either expressly or by conduct, been waived. The following equitable principle formulated by Mr. Pomeroy has been repeatedly approved by this court: 'If there has been a breach of the agreement sufficient to cause a forfeiture, and the party entitled thereto, either expressly or by his conduct, waives it or acquiesces in it, and he will be precluded from enforcing the forfeiture, and equity will aid the defaulting party by relieving against it, if necessary.' 1 Pomeroy Eq. Jur. 452; *Little Rock Granite Co.* v. *Shall,* 59 Ark. 405; *Morris* v. *Green,* 75 Ark. 410; *Banks* v. *Bowman,* 85 Ark. 524; *Braddock* v. *England,* 87 Ark. 393.'' And this rule applies to lease contracts. The case of *Wales-Riggs Plantations* v. *Banks,* 101 Ark. 461, 142 S. W. 828, was a suit to cancel a lease contract entered into between the parties on the alleged ground of breach of various covenants in the lease between appellant and appellee. This court quoted from *Little Rock Granite Co.* v. *Shall, supra,* as follows: ''Where there has been a breach of a contract of lease sufficient to cause a forfeiture, and the party entitled thereto, either expressly or by his conduct, waives it, equity will relieve the defaulting party from a forfeiture, unless the violation of the contract was the result of gross negligence, or was willful and persistent.''

Inasmuch as the decision of this case rests upon the matters stated in the complaint, we have examined same carefully and failed to find any allegation that appellants notified appellee Gilliland that, unless he drilled a well on this 40-acre lease prior to October 1, 1924, he would declare the lease forfeited. Nor is there any allegation in the complaint that, prior to the time that appellee began drilling a well upon said lease, he warned him against doing so, on the ground that the time had expired, or any other ground. Appellants content themselves by alleging that, since the first day of October, 1924, they have notified the appellees that their

right to said lease had expired and notified them to execute proper releases to be filed and recorded, or to enter proper releases on the margins of the records upon which said leases and assignments had been recorded, and that defendants refused to do so. But this is far from saying that they gave them any notice prior to the beginning of drilling operations. The complaint was filed on November 24, and they may have given them notice the day the complaint was filed, as the allegation does not state any date the notice was given, except that it was since October 1, 1924.

But, even if appellants had given the notice prior to the expiration of the lease, or prior to the beginning of the drilling of a well, and thereafter, with knowledge of the fact, suffered the appellee, Gilliland, to enter upon said lease and begin the drilling of a well without doing anything more to prevent it, they should be held to a waiver of the right to insist upon a forfeiture.

The complaint therefore stated no cause of action cognizable in equity. It was a suit for damages in the law court. The chancellor properly transferred the cause to the circuit court, and the circuit court was correct in refusing to remand it to chancery, and, when appellants refused to proceed with the prosecution of their case in the circuit court, the court was right in dismissing the cause for want of prosecution.

The judgment of the circuit court is correct, and it is therefore affirmed.

Mr. Justice KIRBY dissents.