GRAY *v.* STONE.

Opinion delivered January 22, 1912.

1. LIFE INSURANCE—DUTY OF INSURED TO EXAMINE POLICY.—It is the duty of the insured to examine his policy within a reasonable time after its delivery to him and to reject it if it is not what he contracts for; and if he fails to do this, he will be deemed to have accepted it, and can not avoid liability for payment of the premium note. (Page 150.)

2. SAME—EFFECT OF MISTAKE IN APPLICATION.—Insured can not escape liability for payment of his premium notes upon the ground that his age was incorrectly stated in his application where the insurance company had been previously notified of such mistake, but made no offer to return a premium already paid by him and cancel the policy. (Page 150.)

3. SAME—INSURANCE COMPANY BOUND BY AGENT'S KNOWLEDGE.—Where, at the time assured applied for the insurance in question, he told the insurer's agent his correct age, and it was written by the agent incorrectly in the application, either by mistake or otherwise, the insurer would be bound by the knowledge of its agent. (Page 151.)

4. SAME—PREMIUM NOTE—DEFENSE.—Where a husband gave his note for the premium of a policy on the life of his wife, he will be bound thereby, although the policy was not what he understood it would be, if he neither returned nor offered to return the policy. (Page 151.)

Appeal from Howard Circuit Court; *Jefferson T. Cowling,* Judge; reversed.

STATEMENT BY THE COURT.

This is a suit on a promissory note for $135.93, executed May 18, 1910, by W. C. Stone and due J. L. Gray on December 1, thereafter.

The answer admitted the execution of the note, and that it had not been paid, but alleged that it was made in settlement of a premium on two policies of life insurance, one upon his own life, the amount of the premium being $83.20, and the other upon the life of his wife, the premium amounting to $52.70.

That Gray was the agent of the life insurance companies issuing the policies, and solicited the risks. That he agreed to pay the premium on the policy on his wife's life only on the condition that he should be made beneficiary in the policy, and that the policy was issued contrary to such agreement on the life of his wife and payable to her estate in the event of her death. That he received no benefit or consideration whatever on account of its issuance, and that, relative to the premium on his own policy, he stated in his application that his age at his nearest birthday would be sixty-one years. That the agent, intentionally or by mistake, wrote it in the application sixty years. That it was the rule of the companies issuing the policies not to issue a policy on the life of any person exceeding the age of sixty years, and that if his age had been correctly stated in the application no policy would have been issued, and that, having been falsely stated, it would avoid the policy, and that the note was wholly without consideration or benefit to him on that account. That all these facts were known to the agent who took the note at the time the application was made, and the note was then executed and long before the policies were issued. That, as soon as he discovered the mistake as to his age, he wrote to the company offering to surrender the policy if his note was returned, and, after discovering that his wife's policy was made otherwise than as agreed, he notified Gray, who refused to take up the policy or deliver the note, and that by reason of these facts the consideration of the note sued on had wholly failed.

The testimony tended to show that W. C. Stone executed the note sued on in payment for the premium for one year on two policies of life insurance, one upon his own and the other upon the life of his wife. That he told the agent at the time that at his next nearest birthday he would be sixty-one years of age; told him that he was born in June, 1849; that the agent wrote it in the application sixty years, stating the date of his birth to be June, 1850. That he told the agent, after being advised that he could not write a policy on the joint lives of himself and wife, that he would take out one on his own life for his sister, and one on his wife's life for himself as beneficiary, and he said the agent told him that under the law he would be entitled to the money due upon the policy upon the death of

his wife without being made beneficiary therein. The policies were issued and delivered some time after the premium note was given and a receipt signed by both W. C. Stone and his wife, acknowledging receipt of the policies, and "the same being as applied for and said policies comply fully with the terms and conditions as represented to me by the agent," and a warranty that each was in good health and had paid the premium required. W. C. Stone afterwards discovered that his age was stated in the policy as sixty years. He then went down to Dr. Wright, the examiner of the insurance company, and asked him to notify the agent, Mr. Gray, to call and see him when he was next in the community. He also wrote the company on November 25, 1910, and received a reply November 28, 1910, acknowledging the information as to his correct birthday, and agreeing to date the policy back to December 21, 1909, reducing his age to sixty years and requiring him to pay another annual premium. Appellee refused to accept this proposition, not caring to pay two annual premiums, but he didn't return nor offer to return the policy on his own life, nor did he complain to the company at the time of writing about it that the policy on his wife's life was other than as applied for. ` He stated in his testimony, however, that he had no children by his wife, who had children of her own before he married her, and that if he had known the policy had been made payable to her estate, instead of to himself, he would not have signed the note.

The appellant testified that he took the applications for the policies of insurance and the note in payment of the premiums due therefor, and paid to the insurance company the amount of the first premium due it before the issuance of the policies. That he told Stone at the time the applications were made that his company would not issue a policy upon the life of his wife payable to him, but that the policy would have to be made payable to her estate, and she could make him her beneficiary. That Stone gave him his age as nearest sixty, his recollection being he would be sixty on the 21st day of the coming June. That he would not have written it if he had not said it was his age. That Stone's brother came to him before Christmas, and long after the note was due, and told him of the complaint about the incorrect age in his own policy; that he delivered the policies to him and his wife, told them to examine

them, and they signed the receipt therefor. He didn't remember whether appellee gave him the date of his birth or not; that he didn't give him the date of his birth as 1849, for if he had done so he would have figured it out and found it incorrect. He denied telling Stone before he signed the note that the policy on his wife's life would be payable to him and made no agreement to that effect. He remembered saying that he would be the beneficiary, being under the impression that if she had no children he would get her estate.

The court refused to give a peremptory instruction for the plaintiff and several other of his requested instructions, gave three instructions for the defendant, over plaintiff's objections, and one numbered 2 for the plaintiff, as follows:

"No. 2. The jury are instructed that, if the defendant did not wish to accept the policy issued to him, he should have returned it to the company issuing it, or the agent to whom he executed the note, or offered to do so within a reasonable time. And if he failed to do so he is liable on such note for the premium therefor."

The jury returned a verdict for the defendant, and from the judgment thereon plaintiff appealed.

*W. C. Rodgers,* for appellant.

1. The court erred in refusing to give appellant's instruction to render a verdict. *"Ignorantia legis neminem excusat."* 14 Ark. 291; 61 *Id.* 588; 69 *Id.* 309; 74 *Id.* 180; 90 *Id.* 367.

2. Fraud without injury is no ground of relief. 40 Ark. 393-407; 43 *Id.* 462; 53 *Id.* 278; 71 *Id.* 309; 74 *Id.* 70; 77 *Id.* 273.

3. One who takes out a policy of insurance must examine his policy. It was his duty to read and know the contents. After a reasonable time, the policy holder will be deemed to have accepted. 86 Ark. 284; 87 Fed. 63.

4. One can not complain of an alleged fraud, and at the same time hold on to the fruits thereof. 59 Ark. 259. The peremptory instruction was wrong, and the verdict of the jury was in the face of the court's instructions. 74 Ark. 441; 87 *Id.* 366; 76 *Id.* 227; *Ib.* 73; 65 *Id.* 68; 54 *Id.* 602; 61 *Id.* 156; 64 *Id.* 337; 72 *Id.* 445.

5. To escape liability the company should have returned, or offered to return, the premium. 97 Ark. 588.

6. The instructions were abstract. 75 Ark. 239; 74 *Id.* 22; 61 *Id.* 560; 76 *Id.* 560; 56 *Id.* 461; 37 *Id.* 591; 14 *Id.* 537; 36 *Id.* 646; 54 *Id.* 339. The judgment should be reversed for error in the court's charge to the jury, and in refusing to give the prayers requested. Cases *supra.*

*W. P. Feazel,* for appellee.

1. The appellee is not liable because of (1) lack of mutuality, (2) total failure of consideration. 95 Ark. 156; 56 *Id.* 438; 68 *Id.* 278.

2. There is no error in the court's charge. 90 Ark. 585; 92 *Id.* 509. A contract obtained by fraud may always be repudiated without offering to return the premium. 57 Ark. 615; 82 *Id.* 105; 42 *Id.* 208.

3. Fraud avoids a contract *ab initio.* 35 Ark. 483; 17 Cyc. 695, note 14; 73 Ark. 470; 83 *Id.* 15; 72 *Id.* 343; 146 N. C. 578; 125 Am. St. 523; 106 *Id.* 160.

KIRBY, J., (after stating the facts). The undisputed testimony shows that the two policies of insurance applied for were written, delivered to and receipted for by Stone and his wife, and the note sued on executed in payment of the premium. That neither of said policies was ever returned or offered to be returned by appellee to the agent of the company or to the company itself, and that he in fact refused to return the policies or either of them and kept them; neither did he make complaint to the company or to the agent at all until after his note became due, and then only as to his own policy, contending that his age was incorrectly set out therein. This complaint was made more than six months after the application was made and long after the delivery of the policies.

The insured should examine his policy upon its delivery to him, and is bound to do so within at least a reasonable time thereafter and to reject it if it is not what he contracted for; and if he fails to do this, he will be deemed to have accepted it, and can not avoid liability for payment of the premium note. *Remmel* v. *Griffin,* 81 Ark. 269; *Smith* v. *Smith,* 86 Ark. 285.

He made no objection to this form of policy issued to his wife, nor did he offer, until long after the premium note was

due, to surrender or return this policy, and he declined and refused, he says himself, to return the policy issued upon his own life, after he discovered and notified the company of a mistake made therein as to his correct age.

It is also undisputed that appellant paid to the insurance company the amount of money required for its first premium on the policy, that they were duly issued and delivered, and the company, not having offered to return the premium and cancel the policy after it was notified of the incorrect age contained therein, was bound by the terms of the policy to its payment without regard to the correctness of the age. *Minneapolis F. & M. Ins. Co. v. Norman*, 74 Ark. 190, 193; *Bloom v. Home Ins. Agency*, 91 Ark. 367.

If appellee told the agent, at the time of making his application for insurance, his correct age, as he claims to have done, and it was written by the agent in the application, by mistake or otherwise, incorrectly, the company would, nevertheless, be bound to the payment of the policy issued and delivered thereon, the knowledge of its agent, authorized to solicit insurance and fill blanks, being regarded the knowledge of the company. *Insurance Co. v. Brodie*, 52 Ark. 11; *Franklin Life Ins. Co. v. Galligan*, 71 Ark. 295; *Mutual Reserve Fund Ins. Co. v. Farmer*, 65 Ark. 581.

In any event, appellee had the right to pay the premium upon any sort of a policy upon the life of his wife that she would accept herself, and, not having returned nor offered to return the policy, which was delivered to her and accepted by her with his knowledge, after ascertaining that same was not payable to him as beneficiary as he understood it should be he can not avoid payment of the premium note for failure of consideration.

The court erred in refusing to give appellant's requested peremptory instruction. The judgment is reversed, and the cause remanded with directions to enter a judgment for the amount of the note sued on.