AUGUSTA COOPERAGE COMPANY v. BLOCH.

Opinion delivered April 10, 1922.

1.  EQUITY—AFFORDING COMPLETE RELIEF.—Where, to a complaint at
    law, defendant tendered an equitable issue, equity will assume
    jurisdiction and retain it for the purpose of disposing of all the
    issues raised by the pleadings.

2.  REFORMATION OF INSTRUMENTS—SUFFICIENCY OF EVIDENCE.—In a
    suit to reform an instrument, the evidence to establish a mutual
    mistake must be clear, unequivocal and convincing.

3.  EQUITY—ADMINISTERING COMPLETE RELIEF.—Where plaintiff in an
    action at law sought the recovery of treble damages for cutting
    timber, under Crawford & Moses' Dig., § 10320, and the de-
    fendant had the cause transferred to equity, the chancery court,
    having thus acquired jurisdiction and having determined that
    plaintiff was entitled to treble damages under the statute, should
    have awarded such damages without sending the case back to
    the law court.

4.  TRESPASS—UNINTENTIONAL WRONG—TREBLE DAMAGES.—Where the
    cutting of elm timber by the defendant on the land of plaintiff
    was the result of inadvertence and mistake and not a wilful
    wrong, plaintiff could recover only the value of the property
    when taken.

5.  APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—
    Where a decree of the chancery court is sustained by the pre-
    ponderance of the evidence, the cause will not be reversed,
    though erroneous reasons for the decree were given by the
    court.

Appeal from Jackson Chancery Court; *Lyman F. Reeder,* Chancellor; affirmed.

*J. F. Summers,* for appellant; *Geo. B. Webster,* of counsel.

Written instruments may be reformed on the ground of mutual mistake, and proof of such mistake may be established by parol evidence. 98 Ark. 10; 71 Ark. 614; 98 Ark. 23; 144 Ark. 23.

The elm timber was not wilfully cut, but was done in good faith, and the value of the property when first taken must govern. 87 Ark. 80.

The only competent evidence of value of the timber was by actual sales, which fixed the market price. 92 Ark. 297.

*Gustave Jones,* for appellee.

The case was improperly transferred to the chancery court, to escape the award of treble damages. This court has held, however, that in cases originating in chancery treble damages can be awarded.

Reformation of a contract, on account of the mistake of one of the parties, will not be granted. 99 Ark. 480; 83 Ark. 131; 74 Ark. 336; 89 Ark. 668. To justify reformation, proof of mistake must be established not merely by a preponderance of the evidence, but by proof that is clear, unequivocal and decisive. 101 Ark. 46; 108 Ark. 503; 104 Ark. 475; 132 Ark. 227; 94 Ark. 621; 120 Ark. 326; 111 Ark. 205.

The trespass was wilful, and treble damages should have been awarded. 69 Ark. 302; 87 Ark. 80; 96 Ark. 87; 105 Ark. 157.

The question of value is one entirely of opinions of witnesses and does not require expertness on the subject. 137 Ark. 592; 130 Ark. 547.

Wood, J. This action was instituted by the appellees against the appellant in the circuit court to recover damages. The appellees alleged that they were the owners of certain tracts of land in sections 22 and 34 in township 10 north, range 3 west, in Jackson County, Arkansas, and that appellant wilfully trespassed upon these lands by cutting and removing therefrom elm timber to the amount of 290,000 feet, which appellant converted into 870,000 staves of the value of $17,400, for which appellees prayed judgment.

The appellant answered denying all the material allegations of the complaint and set up that it had purchased of the appellees all the elm timber on the sections mentioned, and that, in a deed executed by the appellees to the appellant, conveying the different kinds of timber the appellant had purchased from the appellees, through mutual mistake the elm timber was omitted. That the appellant, knowing that it had purchased the elm timber and believing that it was included in the deed,

proceeded to cut and remove, along with the other timber, 123,000 feet of elm timber from section 22. Appellant denied that it cut and removed any elm timber from section 34. The appellant also alleged that all of the elm timber cut except 33,000 feet was cut more than three years before the commencement of the action and pleaded the statute of limitations to all except 33,000 feet. The appellant made its answer a cross-action against the appellees, and asked that the cause be transferred to equity and that the timber deed be reformed so as to include the elm timber in section 22. The appellees answered denying the allegations of the cross-complaint. The appellant's motion to transfer to equity was granted.

The allegations of appellant's cross-complaint stated a cause of action which entitled appellant to have the cause transferred to the chancery court. The appellant sought reformation of the deed under which it claimed the right to cut the timber in controversy. This gave the chancery court jurisdiction, and, having entertained jurisdiction for that purpose, the court ruled correctly in retaining the cause and in disposing of all the issues involved.

1. The primary question in the case is whether or not the appellees sold to the appellant the elm timber as alleged in appellant's cross-complaint. The appellant contends that the elm timber growing on the tracts mentioned in sections 22 and 34 was sold by the appellees and purchased by the appellant, and this timber should have been mentioned specifically, along with the other timber, in the deed evidencing the transaction; that it was the intention of the parties that this should be done, and that, through mutual mistake of parties in not calling the attention of the draftsman of the deed to this fact, the elm timber was not included therein.

On this issue, a witness who was appellant's superintendent at the time of the alleged sale of timber, testified that he made a survey of the timber before the purchase, and that it was his understanding that appellant was to purchase the gum timber on section 34 and all the soft

woods on section 22 suitable for cooperage stock, which included gum, elm, maple, hackberry and sycamore.

Another witness (Massey) for the appellant testified that when he looked over the timber with a view to purchase same J. H. Keel, one of the appellees (who was representing the other appellees), said that appellant would only get the gum species from section 34, but on section 22 appellant would get everything except the oak and hickory. In other words, appellant was to get the soft wood species including gum, elm, maple, hackberry, sycamore, cottonwood, ash and cypress. This witness stated that he was present at Newport when the contract was made for the timber and heard the conversation relative to the contract between the parties, that is, between Lyons and Keel representing the appellees, and Heckart and Diamant representing the appellant. Concerning this conversation the witness said: "Mr. Diamant made the remark, 'I suppose you all know or understand the purpose of this meeting.' Mr. Lyons said, 'Yes.' Mr. Diamant said, 'I understand that Bloch, Lyons and Keel want to sell the gum on No. 34,' having a list there he had prepared, with the gum and elm and different species, and went over the ash, hackberry, maple, etc., on 22, and said, 'Is that right?'" He went ahead with his conversation with Mr. Lyons and he said, "Have you a price?" and Mr. Lyons said, "Yes." Witness "did not go with them when they went to draw the contract."

Mr. Lyons testified concerning the transaction substantially as follows: Diamant, Heckart, Keel and witness met at the hotel, and Diamant told witness that he would like to buy the gum timber on section 34 and section 22 which was owned by Bloch, Lyons, and Keel. He wanted to know what I wanted for it, and I told him I wanted $13,000 cash. They agreed upon the consideration and terms of payment and went over to Joe Stayton's office, an attorney, and gave the details to Mr. Stayton. After Mr. Stayton had started writing the contract for the gum on the two sections, something came up about

the hackberry, sycamore and tupelo gum. Tupelo gum was not mentioned at first—just the main gum. As there was very little of this timber on these tracts, we decided that we would include those in this price, for it didn't amount to anything from the amount of timber that was standing. The written contract exhibited with the pleadings is absolutely the contract made between the Augusta Cooperage Company and Bloch, Lyons and Keel. It specifies each class of timber specifically as to what they were to get. The witness was asked the following question: "Was there at any time any agreement, understanding or intention to convey to them the elm and ash?" Ans. "No sir, we were under the impression at that time that we had a contract out upon the ash and elm, and that we could not sell it if we wanted to."

J. H. Keel, one of the appellees, testified substantially corroborating the testimony of Lyons. He stated that while Mr. Stayton was drawing the contract the question was asked whether the appellees could put in the ash and the elm with the other varieties of soft wood mentioned, and witness stated, "We couldn't sell the ash and elm. We couldn't let those two go. We could put in the other timber." The reason the witness so stated was because his recollection was "that they had a contract out for both the ash and the elm with other people, which contract had not expired."

We need not pursue this issue further, for it will be observed that there was a sharp conflict in the testimony as to whether or not the appellees sold to the appellant the elm timber, and as to whether or not such timber was omitted from the deed evidencing the transaction through mutual mistake. In view of such conflict in the testimony, it is apparent that the appellant has not proved by a preponderance of the evidence that the elm timber was sold and that it was not included in the deed through mutual mistake of the parties. The appellant therefore falls far short of establishing a cause of action for a reformation of the deed. In one of our recent cases upon

this subject we said: ''Equity will not reform a deed on account of mistake in description unless the proof of such mistake be clear, unequivocal and convincing, nor unless the mistake is clearly shown to have been common to both parties. While there must be something more than a mere preponderance of evidence to show a mutual mistake, the rule does not require that the proof be undisputed. The requirements of law are fully met when the testimony tending to show a mutual mistake is unequivocal and clear, that is, such as to satisfy and convince the court that the mistake was made and that the instrument was so drawn as not to express what the parties to the contract intended.'' *Beneaux* v. *Sparks,* 144 Ark. 23. Other cases are *Greenhaw* v. *Cohn,* 74 Ark. 336; *Varner* v. *Turner,* 83 Ark. 131; *Cherry* v. *Brizzolara,* 89 Ark. 668; *McKnight* v. *Wilmington,* 94 Ark. 621; *Wales-Riggs Plantation* v. *Banks,* 101 Ark. 461; *Tedford Auto Co.* v. *Thomas,* 108 Ark. 503; *Eureka Stone Co.* v. *Roach,* 120 Ark. 326; *Hoffman* v. *Rice-Stix Dry Goods Co.,* 111 Ark. 205; *Welch* v. *Welch,* 132 Ark. 227; *Waddell* v. *Bowdre,* 151 Ark. 474.

2. The trial court found that the trespass was wilful, but refused to award treble damages, citing *Cooley* v. *Lovell,* 95 Ark. 567; *Hendricks* v. *Black,* 132 Ark. 473. These were cases originating in courts of chancery to enforce penalties, and we held that ''courts of equity will not aid in the enforcement of penalties.'' But, where one goes into a court of law to recover treble damages awarded by the statute (§ 10320, C. & M.) and the defendant in the action asks and succeeds in having the cause transferred to equity, the chancery court, having acquired jurisdiction and having determined on trial of the issues that the plaintiff is entitled to treble damages under the statute, may follow the law and award such damages without sending the cause back to the law court.

But while the appellant's alleged cause of action for reformation of the deed breaks down under the above rule, it does not follow from the above facts that the

trespass was wilful, and that the appellees are entitled to treble damages. On the contrary, while the above testimony does not prove clearly and unequivocally that it was the intention of the parties to sell the elm timber and to have the same included in the deed, it occurs to us that it was sufficient, taken in connection with other testimony in the record, to show that the agents and servants of appellant in cutting the elm timber were not wilful trespassers. The testimony of appellant's agent, Massey, who was in charge of appellant's logging operations during the period covered by these alleged trespasses, shows that he believed that the appellant had purchased the elm timber and had the right to cut and remove the same. Although he was mistaken in this belief, nevertheless, the circumstances detailed by him were such as to warrant the conclusion that he honestly entertained such belief, and therefore was acting in good faith in cutting the elm timber, believing that he had a right to do so.

In *U. S.* v. *Flint Lumber Co.,* 87 Ark. 80, we held, quoting from *Pine River Lbr. Co.* v. *U. S.,* 186 U. S. 279, and *Woodenware Co.* v. *U. S.,* 106 U. S. 432, as follows: "Where the trespass is the result of inadvertence or mistake and the wrong was not intentional, the value of the property when first taken must govern." Also citing *U. S.* v. *Anthony Ry. Co.,* 192 U. S. 524. Therefore, the court ruled correctly in refusing to allow appellees treble damages, although its ruling was grounded upon an erroneous reason.

3. The next question is, what was the quantity and value of the elm timber cut by the appellant? The trial court found that the appellant, during the years 1917, 1918 and 1919, had cut 128,218 feet of elm timber from the land of the appellees and found that the value of this timber was $2,412.07, which was about $19 per thousand feet. This issue as to the quantity and value of the elm timber cut is purely one of fact. The testimony bearing upon this issue is quite voluminous, and it could serve no useful purpose as a precedent to set it out and discuss it in detail.

After a careful consideration of it we have reached the conclusion that the preponderance of the evidence shows that the stumpage value of the elm timber would amount to the sum at least of $2,412.07, the amount of the decree of the trial court. Even though the trial court gave erroneous reasons for its findings and decree, nevertheless, we find that the amount of the decree based on the stumpage value of the timber was justified by a preponderance of the evidence in the record.

There is no error which should cause a reversal of the decree of the trial court, and the same is therefore affirmed.