Inter-Southern Life Insurance Company *v.* Holzhauer.

Opinion delivered July 9, 1928.

928

*Bullion & Harrison* and *Utley & Hammock*, for appellant.

*Joseph Morrison,* for appellee.

WOOD, J. The Inter-Southern Life Insurance Company, successor to North American National Life Insurance Company, is a corporation authorized to do the business of life insurance in Arkansas. It will hereafter, for convenience, be called appellant. The State manager for the appellant was Green H. Dale. Paul H. Logsden was an insurance solicitor under Dale. As such solicitor he was authorized to sell policies for appellant. On August 6, 1925, Paul H. Holzhauer signed an application for a policy which, so far as is material here, is as follows:

"I hereby agree, for myself and any person who may have or claim an interest in any contract which may be issued upon this application, * * * that there shall be no contract of insurance until the policy shall have been delivered to me and the first premium paid to said company or to its duly authorized agent * * *. That I have read a sample blank form of the policy applied for * * *, which policy I agree to accept; and I agree that no statements, promises, or information made or given by the person soliciting or taking this application shall be binding on the company, unless his statements, promises or information be reduced to writing and presented to the officers of the company, at the home office, in this application. I also understand that no person is authorized to erase, waive or change in any manner any of the blanks or printed matter furnished by the company, or to promise any other terms or conditions than those published by the company in its printed matter. I agree that if the policy contains provisions for double indemnity or disability benefits,

such provisions shall immediately terminate, if I enter military, naval, aerial, Red Cross, or other relief services.''

On September 4, 1925, the appellant issued to Holzhauer a policy which contained, among others, the following provision, which is material here:

''This policy is issued in consideration of the application therefor, copy of which is attached hereto and made a part hereof. The privileges, provisions and conditions * * * stated on the following pages form a part of this contract as fully as if recited over the signatures hereto.'' * * * Only the president or the secretary has power on behalf of the company (and then only in writing) to make or modify this or any contract of insurance, * * * and the company shall not be bound by any promise or representation heretofore or hereafter given by any person other than the above * * *. This policy and the application herefor (a copy of which application is attached hereto) constitute the entire contract between the parties. * * * This policy takes effect and becomes binding upon the company only upon actual delivery thereof to the applicant. * * * Provisions for accidental death benefit issued as a part of and attached to policy No. 17989 on the life of Paul G. Holzhauer. In consideration of the application herefor, which is made a part hereof, and a copy of which is attached to the policy, * * * in the event of the accidental death of the insured, such accident occurring more than one year after date hereof and under the conditions described herein, the North American National Life Insurance Company of Omaha, Nebraska, promises to pay to the beneficiary named in said policy the sum of $2,000, in addition to the sum insured under the said policy. * * * The provisions of said policy and the application therefor concerning misrepresentations * * * are hereby referred to and by such reference made a part hereof.''

The policy was inclosed to Holzhauer with a letter, which is as follows:

"Inclosed please find your policy No. 17989 for $2,000, being the same as applied for and explained by our Mr. P. H. Logsden, agent." The letter was dated at Little Rock, September 4, 1925, signed by G. H. Dale, State manager of the company. The policy was received by Holzhauer and retained by him until the date of his death, which occurred the fifth or sixth of January, 1926. The sole cause of his death was through violent and external means—the breaking of his leg, and shock and physical suffering incident thereto.

The insured was 26 or 27 years of age. He was a rice farmer; could read and write English, and attend to his own business. The policy was received through the mail with similar policies sold to the insured's brothers. The insured and his brother, Herman, carefully examined the policies. They did not read the whole thing, because they took it for granted that it was a good policy and like Logsden told them it was. The father of the insured was a German and his mother a Russian. He was born at Gillett, Arkansas, and educated at that place in a Lutheran school. He was duller than the balance of the family, and relied on his brother Herman's judgment. Logsden, the appellant's soliciting agent, had authority to sell life insurance for the appellant with disability benefits and double indemnity riders. Logsden had never seen a copy of the double indemnity rider, and had never had it explained to him. Other soliciting agents for appellant sold the double indemnity the same way as Logsden did. He never had any copy of the double indemnity rider, and was instructed by the manager that it would go into effect when the policy was issued, and he sold Holzhauer the policy with that understanding. The premium for double indemnity was $2 per thousand extra, and Holzhauer paid the $4 for the extra $2,000 insurance. Logsden did not know until after Holzhauer was dead

that the double indemnity rider provided that it should not go into effect until one year after the date of its issue. The appellant, at the time it issued its policy and at all times while doing business in Arkansas, had on file with the insurance company the identical form of a double indemnity rider which was attached to the policy issued to Holzhauer, and no other. Appellant did not write or issue double indemnity insurance in any form except that attached to Holzhauer's policy. After the death of Holzhauer and proof of same had been made to the appellant, appellant tendered to the beneficiary in the policy the sum of $2,000 in full settlement of the policy, which was refused.

Pauline Holzhauer, the beneficiary in the policy, hereafter called appellee, instituted this action in the chancery court, in which she set up the policy. She alleged compliance with the terms of the contract on the part of the insured, and that appellant had refused to comply with the terms of the contract by paying the amount of insurance due, to-wit, $4,000. She prayed that the contract of insurance with the double indemnity rider be reformed so as to be in force and effect from the date of the policy, and for judgment in the sum of $4,000, with interest, penalty and attorney's fees. In its answer, the appellant denied liability for any greater sum than $2,000.

The above states the facts upon which the chancery court entered its decree granting the prayer of appellee's complaint and rendering a decree in her favor in the sum of $4,000, with interest at 6 per cent., 12 per cent. penalty, and attorney's fees of 10 per cent. of the amount recovered. From that decree is this appeal.

1. The only two persons that were present at the time the application was signed were the insured and Logsden, the appellant's agent, who was authorized to take applications for the appellant's policies, or, as the testimony shows, "to sell appellant's policies." The application shows that the insured contemplated that a policy might be issued which contained double

indemnity or disability benefits. The uncontroverted testimony of Logsden, who took the application, shows that the insured applied for a policy containing double indemnity or disability benefits. He paid the premium for a policy that should contain such features. The application, which was prepared by the appellant, did not show when the double indemnity rider attached to the policy would take effect. The soliciting agent explained to the insured that the rider providing for the double indemnity insurance, which was attached to and of course a part of the policy, would take effect when the policy took effect. Since there was no one present at the time the written application was signed by the insured except himself and Logsden, the testimony of Logsden establishes conclusively that the insured applied and paid for a policy that should contain disability benefits and double indemnity insurance, and that this feature of the policy should take effect and be in force at the time the policy was issued. But, when the application for the insurance was received and approved by the appellant, it issued its policy, which contained disability benefits and double indemnity insurance in a rider attached thereto, which rider provided that that feature (disability and double indemnity) should not take effect until one year after the date of the policy.

The company accepted the premium paid by the insured for double indemnity insurance, and issued its policy providing for such insurance, which should go into effect one year after the issuance of such policy.

The appellant contends, first, that the appellee is not entitled to a reformation of the contract, and is bound by the terms of the policy as written, because the application and the policy constitute the contract, which was not to become effective until the policy was delivered; that, after the policy was delivered, it was accepted by the insured and retained by him without any objection to its provisions for a period of four months, when his death occurred. To sustain this con-

tention, appellant relies upon the doctrine announced in 1 Joyce on Ins. 267, § 66G, as follows:

"But it is also held that, if a person received a policy of insurance ostensibly in response to an application therefor, which he signed and parted with in the belief, induced by the fraud of the agent taking same, that it called for a policy different from that which it called for in fact, he is bound, as a matter of law, to examine the policy within a reasonable time after it comes to his hand, and to discover obvious departures therein from the one which he supposed he was to get, and promptly, upon discovering the same, to rescind the transaction, give the company due notice thereof, and do all on his part which justice requires to restore the former situation, or he will be held to have accepted the policy as satisfying his application, so as to be precluded from rescinding the same. And the insured is charged with notice of the contents of a written application executed by him, and which, by the terms of the policy, is made a part thereof."

Learned counsel for the appellant also cite and rely upon the following cases of our own court: *New York Life Ins. Co.* v. *Adams,* 151 'Ark. 123, 235 S. W. 412; *Carrigan* v. *Nichols,* 148 Ark. 336, 230 S. W. 9; *Gray* v. *Blackwood,* 117 Ark. 100, 165 S. W. 958; *Gray* v. *Blackwood,* 112 Ark. 332, 165 S. W. 958; *Gray* v. *Stone,* 102 Ark. 146, 143 S. W. 114; *Smith* v. *Smith,* 86 Ark. 284, 110 S. W. 1038; *Remmel* v. *Griffin,* 81 Ark. 269, 99 S. W. 70.

Where an insurance company issues its policy and takes in payment therefor the note of the insured, if the insured retains the policy an unreasonable time, he cannot, when sued on the note, defend on the ground that the policy does not express the terms of the contract, unless he can prove that he failed to read the policy and to return same within a reasonable time with his objections thereto, because of some act of the company which misled and prevented him.

Judge BATTLE, speaking for the court in *Remmel* v. *Griffin, supra,* says:

"It was his duty to examine the policy in a reasonable time after he received it—that is, in such time as he could have done so—and, if he rejected it, to so inform the insurance company, or its agent, and, failing to do so, he is deemed to have accepted it. After such acceptance he cannot avoid the payment of his note on the ground that he did not read the policy, unless he was induced by the insurance company, or its agent, not to do so."

Unless the insured was induced by the insurance company, or its agent, not to read his policy, it would be manifestly unjust to the company to allow him to retain the policy an unreasonable time, or until his note became due, and then plead that the policy did not express the contract. Because, in the meantime, he had been insured, and if he had died the company would have had to pay. Hence under those circumstances he would be estopped. Such is the doctrine announced by Mr. Joyce, *supra,* and the cases cited *supra.*

Where the soliciting or sales agent of an insurance company takes an application for a policy of insurance, telling the applicant that the policy, when issued, if he desires that kind of a policy, will contain, in addition to straight life insurance, a provision for disability and double indemnity insurance, and that the policy will take effect when issued, both as to the straight life and double indemnity insurance, then, when the policy is delivered, it is the duty of the applicant, the insured, to read the policy to see if it expresses the contract, and, if it does not, to return the same within a reasonable time, and to thus notify the company of his objections thereto. This the insured must do, unless the company, or its agent, has done some act which is calculated to, and does, mislead him and prevent him from reading and returning the policy. But, if the insurance company, or its agent, having real or apparent author-

ity so to do, has so misled the insured and caused him not to read and return the policy, then the insurance company, when suit is brought against it by the beneficiary to reform and to recover on the policy, as he alleged it should have been written according to the understanding between the sales agent and the insured that it would be written, cannot defend on the ground that the insured did not read the policy and did not notify it of his objections thereto, or return the policy within a reasonable time. For, under such circumstances, it would be obviously unfair and unjust to the insured and his beneficiary to permit the company to take advantage of its own wrong, and to thus defeat the beneficiary from recovering on the policy. Under such circumstances, the company is estopped.

This brings us, in the final analysis, to the crux of the lawsuit—that is, whether the letter from the appellant's State manager to the insured, taken in connection with the other facts, was sufficient to estop the company and thereby enable appellee to obtain the relief sought. A majority of the court has reached the conclusion that the appellant is estopped.

We have not overlooked the well-established doctrine that a local and special insurance agent, having only authority to solicit applications for insurance and to collect premiums, but not to issue policies, would have no power to issue policies or to bind the company to enter into a contract of insurance in conformity with any representations he may have made. Such an agent has no power to make contracts for the company. See *Mutual Insurance Company* v. *Abbey,* 76 Ark. 328-31, 88 S. W. 950, and cases there cited; *American Insurance Co.* v. *Hornbarger,* 85 Ark. 337-45, 108 S. W. 213; *Pacific Mutual Life Insurance Co.* v. *Carter,* 92 Ark. 378, 123 S. W. 384; 124 S. W. 764; *Home Life and Accident Co.* v. *Haskins,* 156 Ark. 77, 245 S. W. 181. Logsden was not authorized, as a merely local and special soliciting or sales agent of the appellant, to bind the appellant to

issue a policy containing disability and double indemnity insurance to take effect when the policy was issued. The application signed by the insured himself specified that there should "be no contract of insurance until a policy shall have been delivered," etc. Our decision is not bottomed upon the idea that Logsden had authority, real or apparent, to bind the company to issue a policy according to his promise and representation. But our decision is grounded upon the fact that the letter of Dale misled the insured, as his brother testified, and caused them not to read the policy as closely as they would have done had they not been relying upon the explanation of Logsden. The letter was certainly calculated to so mislead the insured.

It will be observed that the insured applied for a policy containing disability and double indemnity benefits, and the written application does not show when this character of insurance was to take effect. Logsden testified that the insured "wanted double indemnity to be in force and effect from the time the policy was issued." He explained to the applicant that such insurance "would be in effect from the time the policy was issued." Logsden, at that time, had not seen the disability rider, but he testified that he told the applicant "it would take effect when the policy was delivered;" "that" says he, "was my instructions from Mr. Dale." He "just told us to add all the features and charge $2 per thousand for the double indemnity." The insured settled for the rider and the policy at the time the application was taken.

While Dale denied, in his testimony, that he gave Logsden such instructions, we are convinced that he is mistaken, and that Logsden is correct in his testimony. It occurs to us that Dale's letter shows conclusively that he knew that Logsden had explained the policy. It shows that he knew that the applicant was applying for a disability and double indemnity policy, which did not show on the face of the application when it went into

effect. Therefore it had to be explained, and the general manager informed the insured that the policy issued was "the same as applied for and explained" by P. H. Logsden, agent. Where agents of foreign companies represent them as general managers or managers, they have generally large discretionary powers in regard to making insurance and transacting business relating thereto. Their powers are similar to those of officers of the company. A resident agent, designated officially as manager, has authority to employ another to solicit risks, contract therefor, to deliver policies, and collect premiums, and the acts of the agent so appointed, done within the employment, will bind the company. He may also waive conditions in the policy, and estop the company by his acts within the scope of his authority. It certainly was within the scope of Logsden's authority, as soliciting or sales agent, to explain the terms of the policy which the company authorized him to sell. He could not make any headway without doing so. The company, through its manager, authorized him to do so; knew that he had done so, and by his letter expressly ratified the explanation Logsden had made. Had Dale simply inclosed the policy to the insured without comment, the case would have been entirely different. The proof that appellee is entitled to the relief sought is "full, clear and decisive." *McGuigan* v. *Gaines,* 71 Ark. 614, 77 S. W. 52; *Parker* v. *Carter,* 91 Ark. 166, 120 S. W. 836; *Waddell* v. *Bowdre,* 151 Ark. 474, 236 S. W. 599; *Augusta Cooperage Co.* v. *Black,* 153 Ark. 133, 239 S. W. 760.

We do not find any intentional or actual fraud on the part of the agents of appellant. The law warranting the relief under the facts proved by the appellee is well expressed by Corpus Juris, vol. 32, p. 1135, par. 242, as follows:

"Even where there is a mistake, and both parties act in good faith, yet when the mistake is that of the company or its agents, and it reasonably induces the

other party to believe that he is insured, the company is estopped to deny the effectiveness of the insurance. The delivery of a policy with the assurance that it is in compliance with the application is a waiver of an agreement that the insured would notify the company if the policy were not right." See also note 4 (ib). See also *Fidelity Insurance Company* v. *Parmer,* 91 Conn. 410, 99 Atl. 1052. See also *Connecticut Fire Insurance Co.* v. *Wigginton,* 134 Ark. 152, 263 S. W. 844; *Stewart* v. *Fleming,* 96 Ark. 371, 131 S. W. 955. The appellant is clearly estopped from asserting that the policy is different from that which its agents represented it would be. The decree is therefore correct, and is affirmed.

SMITH and KIRBY, JJ., dissent.