Edward John MIKUS III *v.* Marie MIKUS

CA 98-313                                           981 S.W.2d 535

Court of Appeals of Arkansas
Division III
Opinion delivered December 16, 1998

*Gean, Gean & Gean*, by: *Roy Gean III*, for appellant.

*Phillip J. Taylor, P.A.* by: *Phillip J. Taylor*, for appellee.

SAM BIRD, Judge. This is an appeal from a decision of the Sebastian County Chancery Court awarding the proceeds of a life-insurance policy on Edward John Mikus, Jr. (Mikus Jr.), to his surviving spouse, appellee Marie Mikus. The appellant, Edward John Mikus, III, is Mikus Jr.'s son. The appellee is administratrix of the estate of Mikus Jr., but not the mother of appellant. Mikus Jr. died in a motorcycle accident on April 23, 1994.

Mikus Jr. and Marie Mikus banked at First National Bank of Roland, Oklahoma, and had loans that were collateralized by an assignment to the bank (to the extent of the loan balances) of the proceeds of life-insurance policies they owned on each other. The forms by which the assignments were effected were furnished by the bank. Appellee's life-insurance policy was for $100,000 and designated Mikus Jr. as primary beneficiary and her parents as contingent beneficiaries. Mikus Jr.'s life-insurance policy was for $250,000 and designated Marie as primary beneficiary and appellant, who was thirteen when the insurance policies were purchased in 1988, as his contingent beneficiary. The policies

contained the following provision regarding beneficiary designations:

> The Beneficiary will be as shown in the application, unless changed by written request filed with the Company; provided, however, that if any beneficiary is to be irrevocable, the Company may require the contract for the change to be made. If at the time of the Insured's death, there is no beneficiary then living, the proceeds will be payable to the Estate of the Insured.

In 1992, when they were about to move their lock and safe business to a new location, Mikus Jr. and Marie decided to change banks to one nearer their business. The Mikuses moved their banking business to Citizens Bank of Lavaca, which subsequently changed its name to River Valley Bank & Trust. They also refinanced their loans with Citizens/River Valley (River Valley) and River Valley sought to collateralize the loans by an assignment of their life-insurance policies as had been done at their previous bank. However, River Valley did not supply its own assignment forms. Instead, the loan officer they dealt with at River Valley told Marie to call her insurance company for the proper forms and to tell the insurance agent to call him (the loan officer) if the insurance agent had any questions about what they wanted to do.

Marie testified that she called their insurance agency, BHC Life & Group Specialists (BHC), and told whoever answered the phone what she needed. Someone at the agency sent Marie change-of-beneficiary forms with instructions to sign them in blank and send them back to the agency. The following instruction appeared on the back of the forms:

> This request, when completed and recorded or endorsed upon the policy, is in substitution of all previous beneficiary designations. Be sure to rename all previous beneficiaries who are to receive any of the proceeds of the policy.

Marie testified that she and Mikus Jr. signed the forms in blank as instructed and returned them to the agency. Then someone at the agency (the record doesn't reveal who) filled in the forms, including inserting the name of "Citizens Bank of Lavacca/ Barling Lender," as the beneficiary of the policies, and then sent a copy of the forms to the Mikuses, but mistakenly mailed them to

the address of Mikus Jr.'s parents. Marie testified that she did not read the forms, but that she noticed the incorrect address on them, which she struck through and wrote in their correct address. She then put the forms in the safe. When the policies were later received, she also put them in the safe where they stayed until the day Mikus Jr. was killed.

It was not until after Mikus Jr. died that Marie or anyone at River Valley Bank realized the mistake in the beneficiary designation forms. Because of the error, the entire proceeds of Mikus Jr.'s $250,000 life-insurance policy were paid by the insurance company to River Valley Bank. After applying it to pay off the balance of the Mikuses' loans, approximately $68,000 was left, which the bank placed in an interest-bearing account and petitioned the court to decide to whom it should be paid. Marie then filed suit, personally and as the administratrix of Mikus Jr.'s estate, against River Valley Bank, BHC insurance agency, the insurance company that issued the life-insurance policy, and appellant, seeking a declaration that the entire amount of Mikus Jr.'s life-insurance policy in excess of the balance of the loans owed to River Valley belonged to her.

Marie contended that the change-of-beneficiary forms were not supposed to have divested the original beneficiaries; rather, they were supposed to have simply assigned the proceeds of the life-insurance policy to River Valley Bank to the extent of the outstanding balance of the loans. She contended that the balance of the insurance proceeds remaining after payment of the loans belonged to her as the designated beneficiary of the policy. Before or during the trial, the insurance agency and the insurance company were dismissed from the suit, and River Valley Bank, which made no claim to the balance of the proceeds, was retained as a party only for the purpose of obligating it to pay the balance to the proper beneficiary as determined by the court. Thus, the suit went forward to determine whether Marie or the estate was to receive the balance of the policy proceeds and the accrued interest.

At trial, appellant contended that Marie and Mikus Jr. had separated and were in the process of getting a divorce at the time of Mikus Jr.'s death. Marie admitted that she and Mikus Jr. had

separated and that she had filed for divorce. However, she contended that they were in the process of reconciliation when Mikus Jr. was killed. She testified that only three months before Mikus Jr.'s death, she and Mikus Jr. had gotten a loan together and had purchased a prefabricated home to move onto property they jointly owned, and that, when the house was ready, they were going to live in it together.

On radically conflicting evidence, the chancellor found that the change-of-beneficiary forms that Marie and Mikus Jr. had signed were not the proper way to collateralize the loans and that the true intent of the parties, Mikus Jr., BHC, and River Valley Bank, was to assign to the bank only that portion of the policy proceeds necessary to discharge the balance of the loans, but not to change the designated beneficiary of the policy. The chancellor looked to the assignments as they previously existed as collateral for the Mikuses' loans before they were refinanced, observing that Marie was designated as Mikus Jr.'s primary beneficiary and appellant as Mikus Jr.'s contingent beneficiary. The chancellor also noted the high improbability that the decedent or any reasonable person would intentionally sign a form that gave the entire proceeds of his life-insurance policy to the bank.

Furthermore, the chancellor noted the unlikelihood that the decedent was knowledgeable and clever enough to know that if he designated the bank as the sole beneficiary of his life insurance, that under the law and the language of the policy, his son would receive most of the balance of his life insurance through his estate. In this regard, the chancellor questioned why Mikus Jr. would not have simply executed a new change-of-beneficiary form in favor of appellant if that had been his intent, and what motive he would have had to try to deceive his wife if, as appellant claimed, Mikus Jr. and Marie were irreconcilably separated. And, finally, the chancellor was persuaded by the fact that Marie had signed the same type of change-of-beneficiary form as Mikus Jr. had signed, in the mistaken belief that she had not changed her life-insurance beneficiary but had merely effected an assignment to the bank as security for the loans. Other evidence considered by the chancellor supported Marie's contention that she and Mikus Jr. had rec-

onciled, including a note and flowers sent by Mikus Jr. to Marie on Valentine's Day, 1994, only two months before he was killed.

The chancellor concluded that the evidence was clear and convincing that Mikus Jr., by executing the beneficiary designation in favor of River Valley Bank, intended only to give to the bank a security interest in his life-insurance-policy proceeds to the extent of his indebtedness, and that he did not intend to remove Marie as the primary beneficiary of his policy. Therefore, the chancellor reformed the beneficiary designation document to reflect what he found to be Mikus Jr.'s intent.

Appellant argues on appeal that there must be fraud in order for the court to reform an instrument and that there was no fraud shown. He further contends that Mikus Jr. did not intend to reunite with Marie, that Mikus Jr. actually had at least one (and maybe more) girlfriends, and that Mikus Jr. was living alone in an apartment at the time of his death. With this evidence appellant argues that the balance of the proceeds of the life-insurance policy should be paid to his father's estate in accordance with the policy provision set out above.

On the other hand, Marie presented extensive evidence that the change in the insurance beneficiary was a mistake, and that it was intended to be merely an assignment of the policy proceeds to the bank as collateral for the loans. She also produced evidence indicating that she and Mikus Jr. had reconciled, and that they had obtained a home mortgage on January 24, 1994, just three months before Mikus Jr.'s death, that covered their jointly owned land and the prefabricated home that was to be moved onto it.

On appeal, we review chancery cases de novo, but we will not reverse the chancellor's findings unless they are clearly erroneous or clearly against a preponderance of the evidence. Ark. R. Civ. P. 52(a); *Riddick v. Streett*, 313 Ark. 706, 858 S.W.2d 62 (1993). Appellant contends that the chancellor erred in reforming the instrument because no fraud was shown. However, equity is not limited to reforming written instruments only upon a showing of fraud. Equity will reform written instruments in two

cases: (1) Where there is a mutual mistake — that is, where an agreement was actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto, and (2) where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the remaining parties. *Falls v. Utley*, 281 Ark. 481, 665 S.W.2d 862 (1984); *Turney v. Roberts*, 255 Ark. 503, 501 S.W.2d 601 (1973); *Arnett & Arnett v. Lillard*, 245 Ark. 939, 436 S.W.2d 106 (1969); *Acklin v. Riddell*, 42 Ark. App. 230, 856 S.W.2d 322 (1993). A mutual mistake is one that is reciprocal and common to the parties, each alike laboring under the same misconception in respect to the terms of the written instrument. It is a mistake shared by the parties to the instrument at the time of reducing the instrument to writing. *Yeargen v. Bank of Montgomery County*, 268 Ark. 752, 595 S.W.2d 704 (Ark. App. 1980). It need not be the mistake of one of the parties to the written instrument. It is only required that the writing fails to reflect the parties' true understanding. *Kohn v.* Pearson, 282 Ark. 418, 670 S.W.2d 795 (1984) (citing D. DOBBS, REMEDIES § 4.3, (1973)). Evidence of mutuality must relate to the time of the execution of the instrument and show that the parties then intended to say one thing and by mistake expressed another thing. *Yeargen v. Bank of Montgomery County, supra.* In *Weiss et al v. Turney*, 173 F.2d 617, 619 (8th Cir. 1949), the court interpreted Arkansas law and said:

> To warrant reformation on the ground of mutual mistake it must appear that by reason of the mistake both have done what neither intended; in other words, the instrument must do violence to the understanding of both parties. Each must have labored under the same misconception in respect to the terms of the written instrument. *Fagan v. Graves*, 173 Ark. 842, 293 S.W. 712 [1927].

In the case at bar, although the chancellor did not specifically state that he had found a mutual mistake by the parties in executing the wrong form to effect an assignment to the bank as collateral for the loans, it is obvious from his order that he did.

A court of equity may grant relief for a mutual mistake in the writing of an insurance contract that results in the written

terms not expressing the clear intent and understanding of the parties. *American Casualty Co. v. Hambleton*, 233 Ark. 942, 349 S.W.2d 664 (1961); *Equity General Agents, Inc. v. O'Neal*, 15 Ark. App. 302, 692 S.W.2d 789 (1985). Many cases support the granting of reformation when an insurance policy is not reflective of the parties' agreement and intentions. For instance, in *Phoenix Assurance Co. v. Boyette*, 77 Ark. 41, 90 S.W. 284 (1905), it was undisputed that the insurance policy issued by the appellant insurance company to the appellee did not express the real agreement and intention of the appellee and the agent of the appellant insurance company. The Arkansas Supreme Court upheld the chancellor's order for reformation of the policy. *See also Pennsylvania Millers Mutual Ins. Co. v. Walton*, 236 Ark. 336, 365 S.W.2d 859 (1963); *Calvert Fire Ins. Co. v. Hardwicke*, 232 Ark. 466, 338 S.W.2d 329 (1960); *Inter-Southern Life Ins. Co. v. Holzhauer*, 177 Ark. 927, 9 S.W.2d 26 (1928); *Granite State Ins. Co. v. Bacon*, 266 Ark. 842, 586 S.W.2d 254 (Ark. App. 1979).

▪ The chancellor's finding that there was clear and convincing evidence of a mutual mistake and his reformation of the beneficiary designation to reflect the true intent of the parties was not clearly erroneous. Consequently, the order reforming the instrument to reflect the true intent of the parties, with the effect of granting the balance of the proceeds of the deceased's life-insurance policy to his widow, as designated beneficiary of the policy, was not error.

Affirmed.

JENNINGS and ROAF, JJ., agree.