THE FIDELITY AND CASUALTY COMPANY OF NEW YORK *vs*. FRANK PALMER.

Third Judicial District, New Haven, January Term, 1917.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The mere omission to examine a policy of insurance to see if it accords with the oral agreement previously made between the parties, does not necessarily and as matter of law preclude the insured from obtaining a reformation of the policy; especially if the acts or declarations of the insurance company's agent induced such omission.

Knowledge of the facts by the person to be affected by an estoppel, is essential to its creation, unless the circumstances are such that knowledge is necessarily to be imputed to him.

In the present case the defendant, who was somewhat illiterate and unable to read English with facility, upon solicitation of the plaintiff's agent agreed orally with him to accept a policy of insurance against liability for the death or injury of the defendant's employees while building a sewer, the premium therefor to be $125 upon an estimated payroll of $25,000, with an increased pro rata charge or rebate to be determined later by the actual amount of the payroll. Shortly thereafter the defendant received the policy, which described the payroll as $2,500 and the premium charge as $125, and stated the rate as being $5 on each $100 of the payroll. A few days later he received from the plaintiff's agent a bill for the

Fidelity & Casualty Co. *v.* Palmer.

premium ($125), which he paid. This bill conformed in all respects to the oral agreement and the defendant made no examination of the policy. Later, one of his employees was killed and the plaintiff paid, as indemnity therefor, $600. Within a year after the termination of the policy, the plaintiff examined the defendant's books and on learning that the amount of his payroll on the sewer construction had been nearly $29,000, sued him to recover five per cent thereon, less the $125 already paid. The defendant filed a cross-complaint praying for a reformation of the policy to accord with the oral agreement, which the trial court granted, and allowed a recovery by the plaintiff of only fifty cents per $100 on the amount of the payroll in excess of the $25,000. *Held:—*

1. That the trial court committed no error in its conclusion that there was a mutual mistake, and that in consequence thereof the policy as written did not express the actual agreement of the parties.
2. That the defendant's failure to ascertain the mistake earlier, did not, under the circumstances detailed in the finding, preclude him from obtaining a reformation of the policy.
3. That inasmuch as the defendant had no knowledge of the true situation, his silence under such circumstances could not constitute a valid ground of estoppel.

Claims of law in this court must be confined to those made upon the trial of the case in the court below which are specifically assigned in the reasons of appeal.

Argued January 17th—decided February 21st, 1917.

ACTION to recover an excess premium alleged to be due on a policy of insurance, brought to the Superior Court in Fairfield County where the policy sued upon was reformed pursuant to a prayer for such relief in the defendant's cross-complaint, and judgment rendered (*Webb, J.*) in favor of the defendant, from which the plaintiff appealed. *No error.*

The plaintiff, on April 1st, 1911, was a corporation duly organized under the laws of New York. At this time one Herbert S. Miller of Stamford was conducting an insurance agency and was the agent of the plaintiff in Stamford. The defendant was then carrying on the business of a general contractor, and was engaged in laying a sewer in Stamford. Early in April, 1911, Miller, as such agent, sought the defendant's permis-

sion to insure him against liability for injury to or death of his servants and employees engaged in constructing the sewer. At that time Miller, acting as agent of the plaintiff, informed the defendant that the premium for such policy would be based upon the amount of compensation paid by the defendant to his employees while engaged on this sewer construction, and requested the defendant to furnish an estimate of the probable amount of such compensation or payroll. The defendant thereupon disclosed to Miller fully all information that could be given to enable a reasonable estimate of the compensation, or amount of the payroll, to be made, and named the sum of $25,000 as such reasonable estimate. Miller thereupon informed the defendant that the premium upon an estimated compensation or payroll of $25,000 would be substantially $100 or $125. Miller also informed the defendant that as to the difference between this estimate and the actual amount of compensation, there would be a pro rata additional charge for any excess over the estimate, and a pro rata rebate to the defendant in case the actual compensation should prove to be less than the estimate. The defendant thereupon agreed to accept a policy written in accordance with the representations of Miller. Miller then applied to one Edwards, the plaintiff's district agent at Bridgeport, for the issuance of the policy, and informed Edwards that the estimated amount of compensation was $25,000. A policy was received by Miller from the district agent, and by Miller sent to the defendant by mail. This policy was dated April 11th, 1911, and was to continue in force for one year from its date. Upon receiving the policy the defendant did not read or in any way examine the same. Within a few days after sending this policy to the defendant, Miller sent and the defendant received a bill for a premium of $125, which

the defendant subsequently paid and Miller receipted the same. This receipted bill is substantially as follows:—

Stamford, Conn., Apr. 19, 1911.

Mr. Frank Palmer,
    To H. S. Miller, Dr.
        Real Estate and Insurance.
Terms Cash

| Date | Policy No. | Company | Term | Amount | Premium |
| --- | --- | --- | --- | --- | --- |
| April 11 | 2209475 | Fidelity & Casualty | 1 yr. | $25,000 | $125 |

H. S. Miller.

Paid May 15, 1911.

Before the defendant accepted this policy and paid the premium, he was assured by Miller that the amount which he would be obliged to pay as premium would be $125 on the estimated compensation of $25,000, with a pro rata additional charge for any excess over said estimated amount, and a pro rata rebate to the defendant in case the actual amount should prove to be less than the estimate.

Through mistake or error on the part of the plaintiff, or its agents, the estimated amount of the defendant's payroll or compensation was stated in the policy to be $2,500 instead of $25,000. The rate of premium was stated in the policy to be $5 for every $100 of compensation, and the estimated premium was stated in said policy to be $125. The defendant was somewhat illiterate and unable to read the English language with facility, but kept the policy in his possession during the entire period for which it was written, without reading it or endeavoring in any way to ascertain whether or not it conformed with his understanding of the statements made to him by the agent Miller as to the amount of premium he would be obliged to

pay. The defendant had no general knowledge of what rates were charged for insurance of this character other than from the statements and representations made to him by the agent Miller. It does not appear whether the plaintiff had any established premium rate for insuring risks of this character. The defendant relied solely upon the statements and representations of Miller before mentioned as to the amount of premium he would become obligated to pay, and by reason of these statements and his belief therein the defendant was induced to accept this policy. The defendant would not have accepted the policy if he had known or understood that by the terms expressed therein he would become obligated to pay, by way of premium, at the rate of $5 on each $100 of compensation. Before delivering this policy to the defendant, Miller looked at the statement of the premium therein and ascertained it to be $125.

On the 24th day of September, 1912, and within one year after the termination of this policy, the plaintiff caused its auditors to examine the books and records of the defendant, with his consent, for the purpose of determining the amount of compensation earned by the employees of the defendant. This examination disclosed that the actual compensation earned by the employees and paid to them by the defendant while engaged on this work and during the term of the policy was $28,905.15. This compensation is in excess of the estimate as set forth in the policy by the amount of $26,405.15. The premium on this excess, at the rate expressed under the terms and provisions of the policy, amounts to $1,320.25. No other payment by way of premium on said policy has been made by the defendant except the payment of the sum of $125 to the plaintiff's agent, Miller, as above stated.

From the facts as they appear to have been admitted

by the pleadings, it seems that on May 24th, 1911, an employee of the defendant was killed while engaged in the defendant's sewer construction work. From the same source we also ascertain that on July 27th, 1911, the insurance company, with the knowledge and consent of the defendant and for the purpose of indemnifying him from loss occasioned by the death of this employee, paid $600.

Upon these facts the trial court reached the following conclusions: (1) that there was a mutual mistake whereby the policy as written did not express the agreement actually entered into between the defendant and the plaintiff acting through its agent Miller; (2) that this mistake was not caused by any act of the defendant, nor did any act of his contribute to the causing of this mistake; (3) that in failing to read the policy the defendant was not guilty of such negligence or laches as should debar him from equitable relief; and (4) that the defendant was entitled to have the policy reformed as prayed for in his cross-complaint.

Judgment was rendered that the policy be reformed by correcting the "schedule of statements therein so that the same shall read as follows: estimated compensation for the period of policy, $25,000; premium rate for $100 of compensation, fifty cents"; and that the plaintiff should recover from the defendant the additional earned premium upon said policy as so reformed, amounting to $19.52, with interest.

*Theodore G. Case*, for the appellant (plaintiff).

*Nichols C. Downs*, for the appellee (defendant).

RORABACK, J. The plaintiff contends that the trial court erred in overruling its claim that "it is the duty of one receiving a policy of insurance pursuant to an

application, to examine it for the purpose of determining whether or not he is receiving what he applied for; that it is his duty to return it to the insurer within a reasonable time if not satisfactory, and that if he retains possession of the policy during the term for which it is issued, without making objection to its terms and conditions he becomes bound by such terms and conditions.''

To sustain this contention the plaintiff cites *Palmer* v. *Hartford Fire Ins. Co.*, 54 Conn. 488, 9 Atl. 248. An examination of this authority shows that in several points it resembles the case now under consideration. It appears that in the case cited the court reformed a policy which the insured had accepted without reading and had retained until a loss occurred. In speaking of the powers of courts of equity to reform written instruments, it is stated, upon pages 500 and 501, "that it is a most frequent and useful office of a court of equity to reform written contracts, and make them conform to the verbal agreement or written draft which of necessity precedes them, is in the knowledge of all, and it is sufficiently accurate to say that no writing is beyond its reach if the prayer for relief is presented in due season and supported by convincing evidence." As to the failure of the insured to read his policy, the court say in that case (p. 510): "The rule of law that no person shall be permitted to deliver himself from contract obligations by saying that he did not read what he signed or accepted, is subject to this limitation, namely, that it is not to be applied in behalf of any person who by word or act has induced the omission to read." This court, in *West* v. *Suda*, 69 Conn. 60, 62, 36 Atl. 1015, says: "The rule of law that no one shall be allowed to escape his contract obligations by saying he did not read what he signed, is a most wholesome and necessary rule, but as applied to the fact

of mistake it is a rule of evidence; the failure to read is not always conclusive of negligence. For obvious reasons it is not conclusive in this case. The rule did not bar the trial court from finding that the mistake was not due to the negligence of the plaintiffs." In *McCusker* v. *Spier*, 72 Conn. 628, 45 Atl. 1011, it was held that "a court of equity will not aid a plaintiff in enforcing a written obligation, in violation of oral stipulations which he admits formed a part of the agreement and which the defendant believed were included in the written agreement when he signed it." It is also said in that case (page 633) that "the omission of Straus to read the deed before signing it is not as matter of law fatal to his defense, although a circumstance to be given due weight in determining the equities of the case upon another trial. He was negligent, but it cannot be said that the pleadings put him in the position of one whose negligence amounts to a violation of his known duty to the adverse party."

It is clear, from the facts set forth in the finding, that, as between the agent of the plaintiff and the defendant, there was a mutual mistake made which did not occur through any fault or negligence of the defendant, unless we should hold that the defendant failed to exercise proper care in neglecting to read this insurance policy. This we cannot do. It is true that the defendant, by a careful examination of his policy, might have discovered that it was not what his agreement called for. If an examination had been made, the nature of the mistake was such that it could easily have been overlooked by a person of ordinary business capacity. It certainly could not have been easily discovered by a person like the defendant in this case, who, as it appears, was a man "somewhat illiterate and unable to read the English language with facility." It appears that he fully and frankly explained to the

plaintiff's agent all the facts and circumstances neces-
sary to be known so that the policy could have been
actually drawn in conformity with the agreement
made.  The record also discloses that the defendant
relied solely upon the statements of the agent as to
the amount of the premium that he would have to
pay, based upon an estimate of $25,000 as the amount
of his payroll.  It is also found that by reason of these
statements made by this agent and the belief that they
were true, the defendant accepted the policy now in
question.  As we have already seen, it has never been
the law of this State that the mere omission to read an
insurance policy, or to know all its contents, would
bar any relief by way of reformation of such instru-
ment.  It necessarily follows, from the facts as they
now appear, that the statements and representations
of the plaintiff's agent to the defendant were such
that the delivery and acceptance of this policy, with-
out a discovery of the mistake, was equivalent to a
declaration upon the part of the insurance company
that the policy, when delivered, was in conformity
with the agreement which had been made with the
defendant.  It was by these declarations that the de-
fendant was induced to accept the policy, and to accept
it without reading it.

The plaintiff cannot avail itself of the claim, now
made, that it appears the trial court erred in holding
that the plaintiff's agent had authority to fix premium
rates which would be binding upon his company.  It
has been repeatedly held by the courts of this State
that claims of law are limited to those made upon the
trial of the case in the court below, and to those specific-
ally made in the assignments of error.  The record
discloses that neither of these conditions exist in the
present case.  This fact was not made a part of the
plaintiff's draft-finding, nor does it appear in those

claims of law made upon the trial of the case in the Superior Court, nor is it to be found specifically stated in the assignments of error. Further than this, the finding states that it did not appear that the plaintiff company had any established premium rates for insuring risks of this character. It follows, therefore, that it is not shown that the premium of $125, fixed in the present case, was at variance with any uniform rate upon risks like the present one.

The plaintiff now insists that the Superior Court erred in holding that "where a person receives a policy of insurance pursuant to an application, retains possession of the same and accepts and retains benefits thereunder, he is estopped from subsequently attacking the validity of the policy or from seeking to have it reformed, without restoring or offering to restore to the insurer any and all sums of money paid by the insurer for the purpose of indemnifying the insured for loss covered by such policy."

One of the essential elements of an estoppel is that the facts relied on to create it must be known to the party to be estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. In the case of *Plympton* v. *Dunn*, 148 Mass. 523, 527, 20 N. E. 180 (cited by the plaintiff), we find the following statements: "But the case is of a nature to require the extremest diligence on the part of the insured, if he means to rescind. Every day that elapsed after the defendant discovered, or ought to have discovered, the error, without notifying the company, he was receiving the benefit of the policy. To be sure, the company might discover the falsity of the statement, but it might not, and the defendant could not be allowed to speculate on that chance. By his silence he left the company bound, so far as they knew, and in a

position in which, if he had died, they might have paid the loss in ignorance of any defence. To accept the benefit of a contract after you have notice of your right to rescind it, is to affirm it, especially when, as here, the benefit accepted, and the corresponding risk imposed upon the company, are of a kind 'that never can be cured in a rational sense' by a subsequent surrender of the policy." In that case it appears that the defendant did not offer to return his policy, or notify the insurance company that he wanted to rescind it, until about one and one half years after his discovery of the facts. This was after an action was commenced. In the case now before us it appears that the defendant received his policy on or about April 11th, 1911, and that the death of his employee occurred about six weeks later. During this interval it is not shown that the defendant discovered, or ought to have discovered, any fact throwing any light upon the provisions of his policy, except the receipt from the plaintiff's agent for his premium of $125, the payment of which was made May 15th, 1911. An examination of this document discloses the important fact that the amount of the defendant's insurance was stated as $25,000, the sum which he has always maintained represented the amount of his estimated payroll. Silence under such circumstances was not to assent to the provisions of this policy as it was written, nor under any principle of estoppel should it operate as a bar to the defendant's right to have a reformation of his policy so made that it will read as it should have been written.

There is no error.

In this opinion the other judges concurred.