# CHARLESTON.

THE FIRST NATIONAL BANK OF BLUEFIELD *v.* J. A. CROY *et ux.*

(No. 6601)

Submitted November 13, 1929.  Decided December 10, 1929.

*Thos. H. Scott* and *Richardson & Kemper*, for plaintiffs in error.

*Arthur F. Kingdon*, for defendant in error.

LITZ, JUDGE:

This is an action by the First National Bank of Bluefield against J. A. Croy and Zola Croy (husband and wife) on two promissory notes for $1,000.00 and $600.00, respectively, dated March 22, 1922, signed and endorsed in blank by the defendants, payable to ''ourselves or order'' at the plaintiff bank, three years after date, with interest from date (due semi-annually), and secured by a trust deed from the makers to Wm. E. Ross and Walter V. Ross, trustees, conveying real estate owned by the grantors in the city of Bluefield. On the face of each note, to which are annexed coupon notes for the interest installments, was endorsed: ''This note is one of two principal notes, which together with interest, is secured by a deed of trust of even date herewith to Wm. E. Ross and Walter V. Ross, trustees.'' Immediately upon signing the notes and signing and acknowledging the trust deed, the Croys delivered them to Wm. E. Ross for the purpose of securing for their benefit a loan of $1,500.00. The difference between this amount and the face value of the notes was to be retained by Ross as compensation for his service. The following day Ross obtained from the plaintiff bank, on his personal note for $1,500.00 and the Croy notes as collateral, a loan of $1,500.00. Failing to deliver to the defendants any part of the loan, a few days later he advised them that he had been unable to secure any money on the notes, and that it would be necessary for them to execute other notes and a second trust deed in order to obtain the desired loan. This was done by the defendants and some weeks later Ross secured a loan of $1,600.00 through financial brokers of Lynchburg, Virginia, on the second series of notes and second trust deed (which conveyed the property covered by the first), and

promptly paid the defendants the sum of $1,500.00. The second series of notes were signed at the home of the defendants in the presence of Ross, who at the time, after stating that he would destroy the first series of notes, took from his pocket some papers, which the defendants assumed to be such notes, tore them in pieces and threw the fragments in a coal bucket. Neither of the defendants, however, made any examination to determine whether the mutilated papers were in fact the notes in question. Before the second trust deed was executed, Ross released the first without the consent or knowledge of the bank. In the summer or fall of 1927 the plaintiff learned this fact and further that Ross had wrongfully released other trust deeds (in which he was trustee), securing numerous other notes held by the bank as collateral for loans from it to him evidenced by his personal notes; but took no steps to notify the defendants or any of the makers of such other notes of its claims. A note of $500.00, so held by the bank, and another of $2,000.00 had been signed, endorsed in blank and delivered to Ross contemporaneously by J. A. Thomas for the purpose of securing a loan for Thomas. Ross hypothecated the $500.00 note to the plaintiff and (apparently) negotiated the $2,000.00 note to some one else, without accounting to Thomas. An employee of the plaintiff, learning of the system of double dealing practiced by Ross about the time it came to the notice of the bank, promptly informed Thomas, who, after some months of persistent effort, succeeded in securing the return by Ross of the two notes. As Ross had paid the bank its interest and renewed his personal notes regularly, it did not demand or receive interest on any of the collateral notes. Ross absconded in June, 1928, a bankrupt. The defendants did not know the plaintiff held their notes until a short while before the institution of this action.

The defenses are (1) that the bank is not a holder in due course, and (2) that by failing to give the defendants timely notice of its claims, it is estopped to assert the rights of a holder in due course.

The first defense is based chiefly upon the inability of the officers of the plaintiff to detail the circumstances of the

transaction involving its acceptance from Ross of the notes as collateral. They deny, however, knowledge of fraud or intended fraud on his part. The records of the bank show that the loan was made on the personal note of Ross and the Croy notes as collateral. It had previously made Ross numerous loans similarly secured, and, therefore, had no reason to doubt his authority to use the particular notes. But why consider the question as to whether the jury were warranted in finding that the plaintiff knew or should have known in what capacity Ross held the notes, when it is undisputed that they had been entrusted to him for the purpose, for which they were used, of raising money? The bank is not responsible for his failure to fulfill his trust by delivering to the defendants the money so raised.

For the purpose of presenting the second issue, which was not submitted to the jury, the defendants tendered an instruction, as follows: "The court instructs the jury that if they believe from the evidence in this case that the plaintiff knowing its rights with respect to the notes of the defendants here sued on, knew or had notice of such facts or circumstances as require it in the exercise of good faith to inform the defendants of its rights or claims, and with such notice or knowledge either designedly or with wilful disregard of the interests of the defendants, kept from or failed to communicate to the defendants information of its rights or claims and thereby misled the said defendants and caused them to lose a valuable right which would have been available to them and by which they could have required another person to pay off and discharge the said notes if the plaintiff had given timely notice of its claim, then the plaintiff is estopped to assert its said claim or rights as to the said notes, and the jury should find for the defendants." This instruction, which the trial court refused, is too general and indefinite to fairly present the defense of estoppel. It does not specify in what manner or against whom the defendants might have proceeded to protect themselves, nor take into consideration by specific provision the financial status of Ross. "In general, instructions should be definite and certain and leave nothing to inference." 14 R. C. L. 770. They should, in a clear, concise

and comprehensive manner, inform the jury as to what material facts must be found in order to recover, or to bar a recovery. Sackett on Instructions, sec. 201. Moreover, the financial status of Ross at the time or before the bank received notice of the trust deed releases was not shown with any degree of certainty. "One of the essential elements of estoppel is that the facts relied on to create an 'estoppel' must be known to the party estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him." *Fidelity & Casualty Co.* v. *Palmer,* 91 Conn. 410, 99 Atl. 1052. Under this rule, which correctly defines the particular principle of estoppel, it was the duty of the bank, at least after receiving notice of the trust deed release, promptly to inform the makers of all the notes it then held which had been affected by such releases. *Thompson* v. *Bennett,* 105 W. Va. 191. But whether the defendants would have been benefitted thereby is for the jury to determine upon sufficient evidence, guided by proper instructions from the court.

The order of the circuit court, complained of by the defendants, setting aside a verdict in their favor and granting the plaintiff a new trial, is affirmed.

*Affirmed.*