[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The Defendant, Advanced Electronic Services, Inc. has moved for summary judgment as to counts one, three, four, five and eight of the plaintiffs October 29, 2001 Amended Complaint. The basis of this motion is that the contract between the parties contains a limitation of liability clause. The defendant also moves for summary judgment as to the plaintiffs claim for punitive damages on the basis that Connecticut law does not allow the recovery of punitive damages in a subrogation action.
Statement of Facts
On February 13, 1993, Elizabeth Forster purchased an alarm system from the defendant. At that time Ms. Forster executed a "Standard Alarm Sales Agreement" with the defendant. This three page document was signed by Ms. Forster in two places and included a three day cancellation period. Ms. Forster did not rescind the contract after the three day cancellation period.
The alarm system purchased by Ms. Forster included a smoke detector/alarm as well as a central station monitoring that would inform the appropriate authorities in the event of a fire, break-in. etc. Ms. Forster purchased the system for $1,900.00 and paid a $24.00 monthly monitoring fee.
On December 12, 1999, a fire occurred at Ms. Forster's home. This resulted in damage to the home itself and loss of personal property. At the time Ms. Forster maintained a homeowner's insurance policy with Covenant Insurance Company that included coverage for losses due to fire. Ms. Forster was paid $1,071,865.50 by Covenant for the damage to the home and the loss of her personal property.
On or about December 11, 2000 the instant action was filed against Advanced Electronic Services. The is a subrogation action in which the real party in interest is Covenant Insurance Company. The basis of the CT Page 12981 lawsuit is that the alarm system failed to alert the central monitoring station of the fire, thereby increasing the extent of damage to the home and the loss of personal property.
The front page of the contract between Ms. Forster and Advanced Electronic Services, Inc. contains the following paragraphs:
LIMITED WARRANTY
 In the event that any part of the alarm system becomes defective, or in the event that any repairs are required, Seller agrees to make all repairs and replacement of parts without cost to the Buyer for a period of one (1) year from the date of installation. Seller reserves the option to either replace or repair the alarm equipment, and reserves the right to substitute materials of equal quality at time of replacement. or to use reconditioned parts in fulfillment of this warranty. This warrant does not include batteries, reprogramming, damage by lighting, electrical surge or foil breaks.
 Except as set forth in this agreement, Seller makes no express warranties as to any matter whatsoever, including, without limitation, the condition of the equipment, its merchantability, or its fitness for any particular purpose. Seller does not represent nor warrant that the alarm system may not be compromised or circumvented; or that the system will prevent any loss by burglary, hold-up, fire or otherwise; or that the system will in all cases provide the protection for which it is installed. Seller expressly disclaims any implied warranties, including implied warranties of merchantability or fitness for a particular purpose.
 EXCULPATORY CLAUSE:
The Seller and Buyer agree that the alarm equipment, once installed, becomes the personal property of the Buyer; that the equipment is not permanently attached to the realty and shall not be deemed fixtures. Buyer agrees that Seller is not an insurer and no insurance coverage is offered. The alarm system is designed to reduce certain risks of loss, though Seller does not guarantee that no loss will occur. Seller is not assuming liability, and, therefore shall not be liable to Buyer for any loss or damage sustained by Buyer as a result of burglary, theft, hold-up, equipment, failure, fire, smoke, or any other cause whatsoever, regardless of whether or not such loss or damage was caused by or contributed to by Seller's negligent performance or failure to perform any obligation. CT Page 12982
LIMITATION OF LIABILITY:
 The parties agree that the alarm system is not designed or guaranteed to prevent loss by burglary, theft, and other illegal acts of third parties, or loss by fire, smoke, water or any other cause. If, notwithstanding the terms of this agreement, there should arise any liability on the part of the Seller, as a result of burglary, theft, hold up, fire, smoke, equipment failure, or any cause whatsoever, regardless of whether or not such loss, damage or personal injury was caused by or contributed to by Seller's negligence to any degree or failure to perform any obligation, such liability shall be limited to an amount equal to 5% of the purchase price paid by purchaser, or to the sum of $250.00, whichever is greater. Buyer acknowledges that Seller has offered additional and more sophisticated equipment at additional cost to purchaser. If Buyer whises to increase Seller's maximum amount of such limitation of liability, Buyer may, as a matter of right, at any time, by entering into a supplemental agreement, obtain from the Seller a higher limit by paying an additional amount of consonant with the increase in liability. This shall not be construed as insurance coverage.
The reserve side of the first page of the contract contains the following language:
INDEMNITY:
 Buyer agrees to and shall indemnify and hold harmless the Seller, its employees, agents and subcontractors, from and against all claims, lawsuits, including reasonable attorney's fees, and losses asserted against and alleged to be caused by Seller's performance, negligent performance, or failure to perform its obligations. Parties agree that there are no third party beneficiaries of this contract. Buyer on its behalf and any insurance carrier waives any right of subrogation Buyer's insurance carrier may otherwise have against Seller or Seller's subcontractors arising out of this agreement or the relation of the parties hereto.
Discussion of the Law and Ruling
Practice Book § 17-49 (formerly § 384) provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 780-81, 595 A.2d 334 (1991); Lees v. MiddlesexCT Page 12983Ins. Co., 219 Conn. 644, 650, 594 A.2d 952 (1991). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; D.H.R. Construction Co. v. Donnelly, 180 Conn. 430,434, 429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book §§ 17-45, 17-46; Burns v. HartfordHospital, 192 Conn. 451, 455, 472 A.2d 1257 (1984). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Town Bank Trust Co. v.Benson, 176 Conn. 304, 309, 407 A.2d 971 (1978); Strada v. ConnecticutNewspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is 7 whether a party would be entitled to a directed verdict on the same facts. Batick v. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982); NewMilford Savings Bank v. Roina, 38 Conn. App. 240, 243-44, 659 A.2d 1226
(1995).
Summary judgment should only be granted if the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue as to any material fact. Scinto v. Stain, 224 Conn. 524, 530, cert. denied,114 S.Ct. 176, 126 L.Ed.2d 136 (1993); Connell v. Colwell, 214 Conn. 242,246, 571 A.2d 116 (1991). Summary judgment is "designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried." Wilson v. City of New Haven, 213 Conn. 277, 279, 567 A.2d 829
(1989)
The defendant has moved for summary judgment as to counts one (negligence), three (breach of contract), four (breach of implied warranty), five (breach of express warranty) and eight (product liability) on the grounds that the contract between Elizabeth Forster and Advanced Electronic Services contains an limitation of liability clause which limits the defendant's liability, if any, to $250.00.
There is no Connecticut appellate law addressing the enforceability of liability disclaimer or limitation clause in the alarm system context. However, a number of Connecticut superior court decisions have upheld similar liquidated damages. See U.S. Fidelity Guaranty v. SonitrolServ., Docket No. 93-0134267 (July 29, 1996, Arnold, J.); ConvenientPetrol v. Sonotrol Comms., Docket No. 89-0364888 (June 12, 1992, Wagner, J.); Benjamin v. Detect, Inc., Docket No. 319789 (January 26, 1996, Moraghan, J.); Hanover Insurance Co. v. American Dist. Tele., Docket No. 88-023 2346 (December 4, 1991, Stengel, J.) In addition, the Second Circuit in interpreting Connecticut law upheld summary judgment in favor of an alarm system manufacturer based upon a similar limitation clause.Leon's Bakery, Inc. v. Industrial Electric Service, Inc., 990 F.2d 44
CT Page 12984 (2nd. Cir. 1993).
Leon's Bakery involved a fire at a bakery that resulted in extensive property damage. The bakery was paid for the fire damage and other losses by its insurer, who became subrogated to Leon's claims against third parties for these amounts. Leon filed suit against the Grinnel Corporation, who had designed and installed the bakery's fire protection system. The nature of the claim was that the system failed to operate properly. The claim sounded in product liability, negligence and breach of implied and express warranties.
When the system was purchased and installed Leon and Grinnel had executed a contract that included a limitation of liability clause and a warranty clause similar in language to the contract with Ms. Forster. Grinnel moved for summary judgment based on the limitation of liability clause. The district court granted summary judgment in favor of Grinnel.Leon's Bakery appealed. The second circuit upheld the district court's decision. In discussing the enforceability of the limitation of liability clause the court noted: "[f]rom all that the parties have cited to us and from all that our research has unearthed, it appears that all of the courts that have considered the validity of limitation-of-liability clauses in contracts for the provision of fire alarm systems have found those clauses to be permissible." Id., 48. The court placed particular emphasis on the fact that the plaintiff had insurance to cover their losses: "most persons, especially operators of business establishments, carry insurance for loss due to theft. . . . No reasonable person could expect that a provider of an alarm service would, for a fee unrelated to the value of the property, undertake to provide an identical type of coverage should the alarm fail to prevent a crime." Id., 48-49. The court went on to hold that this reasoning was equally applicable to a fire alarm company. Id, 49; and that the limitation w5s applicable to a product liability claim. Id., 50.
While the plaintiff in in Leon's Bakery was a commercial entity and Ms. Forster is an individual, the rationale for upholding the limitation of liability clause is identical in both cases. That is, it is not reasonable to expect that a provider of an alarm service would, for a fee unrelated to the value of the property, undertake to provide an identical type of coverage should the alarm fail to prevent a property loss.
Decisions from other jurisdictions are in accord with the Leon'sBakery decision. In each case the court upheld a liquidated damages clause similar to the Forster contract. See Tessler and Sun, Inc. v.Sunitrol Security Systems, 203 N.J. Super., 477, 497 A.2d 530 (1985);Steiner Corporation v. American District Telegraph, 106 Idaho 787, CT Page 12985683 P.2d 435 (1984); Hartford Fire Insurance Co. v. ArchitecturalManagement, Inc., 194 Ill. App.3d 110 (1990); Hartford Fire InsuranceCo. v. Holmes Protection Group, 673 N.Y.S.2d 132, 250 App.Div.2d 526
(1988); Guthrie v. American Protection Industries, 160 Cal.App.3d 951,206 Cal.Rptr. 833 (Cal.App. 2 Dist. 1984.)
The "Limitation of Liability" clause in the Forster contract may be viewed as a liquidated damages clause. Connecticut courts have promulgated a three prong test to determine the validity of a liquidated damages clause. The requisite three conditions are: (1) the damage which was to be expected as a result of the breach of contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance, and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by the contractee in the event of a breach of contract. Berger v. Shanahan, 142 Conn. 726, 732, 118 A.2d 311
(1955). The contract between Ms. Forster and Advanced Electronics meets this standard.
With respect to the first prong, the potential damages due to a breach of the contract are uncertain and difficult to determine. The defendant is not a property insurer and cannot be expected to know the value of a customer's home and belongings. As a California appellate court noted in a decision involving a similar limitation of liability clause: "The possibilities of the consequences of a failure of the defendant to perform its obligation under the contract are innumerable . . . Where there had been a failure of performance and a loss, what part of that loss could be attributed to the failure of performance; or how much of that loss would have resulted had there not been a failure of performance? This is not a case where the reasonable expectations of the parties to the alarm service contracts have been frustrated. The insureds procured insurance for the very losses that were suffered." Fireman's Fund v. Morse SignalDevisces, 151 Cal.App.3d 620, 198 Cal.Rptr. 756, 760 (Cal.App. 2 Dist. 1984).
It would have been impossible in 1993 for the defendant to project what damage Ms. Forster might sustain in a fire at some future date and what percentage of that loss might be due to a malfunctioning alarm.
With respect to the second prong, the contract language evidences the intent of the parties. Ms. Forster signed both pages of the contract and admitted that she was given three days in which to review the contract provisions and cancel the contract if she so chose. "In situations in which the parties have their agreement in writing, their intention is to CT Page 12986 be determined from its language and not on the basis of any intention either may have secretly entertained." (Citation omitted) Thompson Peck, Inc. v. Harbor Marine Contracting Corporation, 203 Conn. 123, 131,523 A.2d 1266 (1987).
With respect to the third prong, the Leon's Bakery decision stated that "the supplier . . . is paid for its equipment and services, and the price does not generally include a sum designed to anticipate the possible need to pay the purchaser the value of the property that the system is to protect. The owner or the custodian of the property is in a far better position than the alarm system seller to know the property's value and bargain with an insurance company for appropriate coverage and an appropriate premium." Leon's Bakery, supra., at 49 This reasoning is equally applicable to the present case. Ms. Forster was insured by Covenant Insurance Company and was compensated in the amount of $1,071,865.50. In contrast, Ms. Forster paid $1,900 for the alarm system and was charged a monthly monitoring fee of $24.00. As the contract states, Advanced Electronics is not an insurer and cannot be expected to cover such losses.
In addition to the limitation of liability clause, the contract contains a waiver of subrogation clause. Covenant paid Ms. Forster for her losses and thereby became subrogated to the extent of that payment. In her deposition Ms. Foster acknowledged that she did not initiate this lawsuit and pursuant to her contract with Covenant she was obligated to cooperate with them in this action.
The defendant argues that the waiver of subrogation clause in the contract with Ms. Forster is an alternate ground for summary judgment. While there is no Connecticut authority as to waiver of subrogation clauses in alarm services contracts, the validity of a subrogation waiver has been recognized. See Maryland Casualty Co. v. Trane, 46 Conn. Sup. 173,742 A.2d 444 (1999). "The insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only such rights as the insured possesses . . . Therefore, any defense which a wrongdoer has against the insured is good against the insurer subrogated to the rights of the insured." Orselet v. DeMatteo, 206 Conn. 542, 546-547, 539 A.2d 95
(1988). The court in Maryland Casualty, supra, relied on Orselet and stated, "Enterprise entered into a contract with Leach and part of the consideration to Enterprise was the waiver of Leach's subrogation rights. Maryland Casualty, therefore, cannot be subrogated to Leach's rights against Enterprise. To do so would deny to Enterprise the consideration it obtained in its contract with Leach." MarylandCasualty, supra, at 178. CT Page 12987
The plaintiff argues that there are factual and legal issues which prevent the enforcement of the waiver of subrogation clause. In the absence of appellate authority, this court declines to base the granting of summary judgment on the existence of the waiver of subrogation clause.
The plaintiff claims a genuine issue of material fact exists as to whether the parties had a "meeting of the minds" as to the terms of the alarm monitoring agreement. The authority cited in support of this argument is inapposite. Avon Meadow Condo. Assn., Inc. v. Bk., BostonCt., 50 Conn. App. 688, 719 A.2d 66 (1998) and Geary v. WentworthLaboratories, 60 Conn. App. 622, 760 A.2d 969 (2000) both involve oral contracts in which the existence of a contract was at issue. "Although ordinarily the question of contract interpretation being a question of the parties' intent is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) Tallmadge Bros., Inc. v. Iroquois GasTransmission System, L.P., 252 Conn. 479, 495, 746 A.2d 1277 (2000).
In this case the plaintiff admits that she signed a written contract with the defendant. In fact, she is now suing on that contract. The terms of the limitation of liability clause on which the defendant relies are clear and unambiguous. The plaintiff does not argue to the contrary. Instead, she argues that she was not advised about the presence of the terms in the contract. This is not a valid defense. "The general rule is that where a person of mature years and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it and notice of its contents will be imputed to him if he negligently fails to do so." Ursini v. Goldman, 118 Conn. 554,562, 173 A. 789 (1934). A party may not assert as a defense to an action on contract that it did not understand what it was signing. JohnM. Glover Agency v. RDB Building, LLC, 60 Conn. App. 640, 645, 760 A.2d 980
(2000).
The plaintiff claims that the defendant's salesperson's alleged misrepresentation as to the system's use by the Greenwich Police Department constitutes a "fraudulent misrepresentation," which renders the contract void. Mrs. Forster's own testimony does not support this claim. She testified that she could not say whether this statement made any difference as to her decision to purchase the system. Furthermore, she acknowledged that owning the alarm system reduced her insurance premiums.
There is some authority that a party can be excused from their failure CT Page 12988 to read the terms of a contract, it the contract is procured by fraud.Ursini v. Goldman, supra, at 562. However, the type of fraud involved is one which induces the failure to read the contract. See Fidelity Casualty Co. v. Palmer, 91 Conn. 410, 416, 99 A. 1052 (1917). There is no allegation here that any representative of the defendant told the plaintiff that the contract she signed was not a contract, or that she did not have to read it. On the contrary, the plaintiff has admitted that she was given three days to read a three page contract. Had she done so she would have read that:
 Seller makes no express warranties as to any matter whatsoever, including, without limitation, the condition of the equipment, its merchantability, or its fitness for any particular purpose. Seller does not represent nor warrant that the alarm system may not be compromised or circumvented; or that the system will prevent any loss by burglary, hold-up, fire or otherwise; or that the system will in all cases provide the Protection for which it is installed.
The defendant also seeks summary judgment as to the plaintiffs claims for common law punitive damages and double/punitive damages under C.G.S. § 52-240b (product liability). Connecticut law does not recognize the recovery of punitive damages in a subrogation action. Utica MutualInsurance Co. v. Denwat Corp., 778 F. Sup. 592, 593-594 (1991).
Covenant's subrogation rights do not extend beyond the payments made to discharge its obligation to its insured. As noted in the Utica decision: "under Connecticut Law it is axiomatic that a subrogee's rights can arise no higher than those of a subrogor. It is from this premise that other courts have deduced the rule that punitive damages are unavailable to a subrogee." (Citations omitted) Id., 593-594. In Connecticut "punitive damages are designed not to punish the defendant for his offense but rather to compensate the plaintiff for his injuries." Miller v. Drouin,183 Conn. 189, 190, 438 A.2d 863 (1981). Subrogation has been defined as "a legal fiction through which one who, not as a volunteer or in his own wrong and where there are no outstanding and superior equities, pays the debt of the other, and the debt is treated in equity as still existing for his benefit." (Emphasis added) Home Owner's Loan Corp. v. Sears,Roebuck Co., 123 Conn. 232, 239, 193 A. 769 (1937). In this case the debt is limited to Covenant's payments to Ms. Forster. To allow the recovery of punitive damages in this case would contravene the purpose of subrogation and produce a windfall for Covenant.
The plaintiff claims the defendant is procedurally barred from moving CT Page 12989 for summary judgment as to the prayer for relief for punitive damages in that it should have filed a motion to strike that claim. However, that this lawsuit was, in fact, a subrogation action by Covenant Insurance Company was not apparent on the face of the pleadings. The defendant learned of the nature of the lawsuit through discovery at a time when it was procedurally impossible for the defendant to file a motion to strike. Summary judgment is "designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried." Wilsonv. City of New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). The plaintiff has no right to recover punitive damages and, therefore, there is no need to allow the delay and expense of litigating that issue.
Summary judgment may enter in favor of the plaintiff in the amount of $250 on counts one, three, four, five and eight of the plaintiffs October 29, 2001 Amended Complaint and in favor of the defendant on the plaintiffs claim for punitive damages.
By the court,
___________________ Aurigemma, J. CT Page 12990